VIRGINIA:

                 IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

A. P. G.

████████████████, AN INFANT, BY
HIS MOTHER AND NEXT FRIEND,
BRITTANY M. JONES,

    Plaintiff,

v.                                   Case No. CL21-2040-5

FISHER-PRICE, INC., MATTEL, INC.,
WAL-MART.COM USA, LLC, WALMART,
INC., WAL-MART ASSOCIATES, INC.,
AND WAL-MART STORES EAST, LP ,

    Defendants.

## DOCKET SHEET

Following is a list of pleadings and other documents filed with the City of Richmond Circuit Court:

| | |
|---|---|
| Complaint | 5/7/21 |
| Motion to Amend | 11/30/21 |
| Order on Motion for Leave to Amend | 12/21/21 |
| Proof of Service on Fisher Price | 1/28/22 |
| Proof of Service on Mattel | 1/28/22 |
| Proof of Service on Walmart | 1/28/22 |
| Consent Order re Extension to File Answer and Discovery Responses – Filed not entered | 2/18/22 |
| Affidavit Service of Process to Secretary of the Commonwealth – Fisher Price | 2/23/22 |
| Affidavit Service of Process to Secretary of the Commonwealth – Mattel, Inc. | 2/23/22 |

**V I R G I N I A :**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

A.P.G.

██████████████, an infant,     :
by his mother and next friend,     :
**BRITTANY M. JONES**     :
      :
     **Plaintiff,**     :     Case No. CL21-2040-5
      :
**v.**     :
      :
      :
**FISHER-PRICE, INC.**     :
**636 Girard Avenue**     :
**East Aurora, New York 14052**     :
      :
<u>Serve:</u> **Secretary of the Commonwealth**     :
     **Service of Process Department**     :
     **P.O. Box 2452**     :
     **Richmond, VA 23218-2452**     :
      :
     **and**     :
      :
**MATTEL, INC.**     :
**333 Continental Boulevard**     :
**El Segundo, CA 90245**     :
      :
<u>Serve:</u> **Secretary of the Commonwealth**     :
     **Service of Process Department**     :
     **P.O. Box 2452**     :
     **Richmond, VA 23218-2452**     :
      :
     **and**     :
      :
**WAL-MART.COM USA, LLC**     :
**7000 Marina Boulevard**     :
**Brisbane, California 94005**     :
      :
<u>Serve:</u> **CT Corporation System, R/A**     :
     **4701 Cox Road**     :
     **Suite 285**     :
     **Glen Allen, VA 23060-6808**     :

RECEIVED AND FILED
CIRCUIT COURT

MAY -7 2021
2:20

EDWARD F. JEWETT, CLERK
BY _____ D.C.

1

**and**
:
:
**WALMART INC.**
**702 SW 8th Street**
**BENTONVILLE, AR 72716-6209**
:
:
<u>Serve:</u> **CT Corporation System, R/A**
**4701 Cox Road**
**Suite 285**
**Glen Allen, VA 23060-6808**
:
:
**and**
:
:
**WAL-MART STORES EAST, LP**
**702 SW 8TH STREET**
**BENTONVILLE, AR 72716-0555**
:
:
<u>Serve:</u> **CT Corporation System, R/A**
**4701 Cox Road**
**Suite 285**
**Glen Allen, VA 23060-6808**
:
:
**and**
:
:
**WAL-MART ASSOCIATES, INC.**
**702 SW 8th Street**
**Bentonville, AR 72716-6209**
:
:
<u>Serve:</u> **CT Corporation System, R/A**
**4701 Cox Road**
**Suite 285**
**Glen Allen, VA 23060-6808**
:
:
**Defendants.**
:

## COMPLAINT

**(Personal Injury; Products Liability; Breach of Warranty; Negligence; Gross Negligence; and Breach of Virginia Consumer Protection Act)**

COMES NOW Plaintiff A.P.G. [REDACTED], a minor, by his next friend, Brittany M. Jones,

by counsel, and moves for Judgment against Defendant Fisher-Price, Inc. ("Fisher-Price");

Defendant Mattel, Inc. ("Mattel"); and Defendants Walmart Inc., Wal-Mart Stores East, LP,

2

Wal-Mart Associates, Inc., and Wal-Mart.com USA, LLC (collectively "Defendant Walmart") and alleges as follows:

## JURISDICTION AND VENUE

1.     This cause of action arises under the law of Virginia; therefore jurisdiction is appropriate in this Court.

2.     Personal jurisdiction is appropriate over Defendants pursuant to § 8.01-328.1 of the Virginia Code.

3.     Venue is appropriate in this Court under Virginia Code § 8.01-262 because Defendants Mattel and Fisher Price have an agent appointed to receive process by operation of law, and further all Defendants regularly conduct substantial business activity in this forum and there exists a practical nexus between the case and this forum.

## PARTIES

4.     Plaintiff ▮▮▮▮▮▮▮▮▮▮ is a minor and, at the time of the filing of this lawsuit, a citizen and resident of Mecklenburg County in the Commonwealth of Virginia.   ▮▮▮▮ was born on March 29, 2019, and was approximately six weeks old on the day of the incident.

5.     Brittany M. Jones, is a citizen and resident of Mecklenburg County in the Commonwealth of Virginia, and brings this action on behalf of her natural son, ▮▮▮▮▮▮ ▮▮▮▮▮, as his next friend. Brittany M. Jones, as Next Friend of ▮▮▮▮▮▮▮, represents that the real party-in-interest is ▮▮▮▮▮▮▮▮▮

6.     Upon information and belief, Defendant Fisher-Price was, and is at all times relevant herein, a business entity incorporated in the State of Delaware and headquartered in the State of New York. Defendant Fisher-Price is also known as "Fisher-Price Brands" and is a subsidiary of Mattel, Inc.

7.      Upon information and belief, Defendant Fisher-Price was at all times relevant engaged in the business of designing, manufacturing, and/or distributing to merchants products including the dangerously defective product that directly and proximately caused Plaintiff's injuries.

8.      Upon information and belief, Defendant Mattel was, and is at all times relevant herein, a business entity incorporated in the State of Delaware and headquartered in the State of California.

9.      Upon information and belief, Defendants Fisher-Price and Mattel were at all times relevant herein engaged in the business of designing, manufacturing, importing, distributing, and/or selling to consumers the dangerously defective product that directly and proximately caused Plaintiff's injuries.

10.     Upon information and belief, Defendant Walmart Inc. is a corporation authorized and existing under the laws of the State of Delaware with its principal place of business in Bentonville, Arkansas. At all relevant times, Defendant Walmart Inc. was authorized to transact business and did business in Virginia on a regular and routine basis and at all times relevant herein engaged in the business of importing, distributing, and/or selling to consumers the dangerously defective product that directly and proximately caused Plaintiff's injuries.

11.     Upon information and belief, Defendant Wal-Mart.com USA, LLC is a limited liability company authorized and existing under the laws of the State of California with a principal office in Brisbane, California. At all relevant times, Defendant Wal-Mart.com USA, LLC was authorized to transact business in, operated its e-commerce business in, and regularly received business from consumers in Virginia and at all times relevant herein engaged in the business of importing, distributing, and/or selling to consumers the dangerously defective

4

product that directly and proximately caused Plaintiff's injuries.

12.     Upon information and belief, Defendant Wal-Mart Associates, Inc. is a corporation existing under the laws of the State of Delaware with its principal place of business in Arkansas. At all relevant times, Defendant Wal-Mart Associates, Inc. did and was authorized to transact business in Virginia on a regular and routine basis and at all times relevant herein engaged in the business of importing, distributing, and/or selling to consumers the dangerously defective product that directly and proximately caused Plaintiff's injuries.

13.     Upon information and belief, Defendant Wal-Mart Stores East, LP is a limited partnership authorized and existing under the laws of the State of Delaware with its principal place of business in Arkansas. At all relevant times, Defendant Walmart Stores, Inc. did and was authorized to transact business in Virginia on a regular and routine basis and at all times relevant herein engaged in the business of importing, distributing, and/or selling to consumers the dangerously defective product that directly and proximately caused Plaintiff's injuries.

14.     Defendants Walmart Inc.; Wal-Mart Stores East, LP; Wal-Mart Associates, Inc.; and Wal-mart.com USA, LLC will collectively be referred to herein as "Defendant Walmart."

15.     At all relevant times, Defendants acted by and through their subsidiaries, employees, agents, and servants, who were acting within the scope of their employment, agency, or master-servant relationship with Defendants.

## FACTS

### The Product

16.     The Defendants Fisher Price and Mattel first marketed and sold inclined sleepers in the United States in 2009 with its first inclined sleeper product, the Rock 'N Play Sleeper.

17.     Inclined sleepers are products designed to allow an infant to sleep at an incline

5

between 10 and 30 degrees.

18.     Defendants Fisher-Price, Mattel, and Walmart marketed these products as safe for all-night sleep.

19.     The product category was popular and Defendants continued to develop and market additional products with inclined sleepers, including the product at issue in this case—the Ultra-Lite Day and Night Play Yard.

20.     The Ultra-Lite Day and Night Play Yard (hereinafter "Play Yard") is a portable multi-tasking product—an inclined sleeper, changing station, and play yard all in one—made for newborn babies who are less than 35" in height.

21.     The Play Yard includes a removable inclined sleeper that attaches to the top of the play yard at four points of contact. The inclined sleeper attachment has soft padding and hangs suspended over the play yard. *See* figure below.



22.     At all relevant times and upon information and belief, Defendants marketed and advertised the product at issue, as well as its other inclined sleeper products, as safe for its intended purposes: an inclined all-night sleeper, changing station, and play yard.

### ▇▇▇▇ Incident

23.     Plaintiff ▇▇▇▇▇▇▇ was the appropriate age and size for the Play Yard, as advertised by Fisher-Price, at the time of the incident.

24.     ▇▇▇▇ parents purchased the play yard online from Walmart specifically for ▇▇▇▇ and shortly before he was born on or around March 14, 2019.

25.     At the time of the incident, Plaintiff ▇▇▇▇▇▇▇ was approximately six weeks old, lacked the mobility to self-correct his position, and was not yet able to roll himself over onto his side or back.

26.     At all relevant times, ▮▮▮▮ parents used and assembled the Play Yard in accordance with the instructions provided by Defendants with the product.

27.     The Play Yard was typically kept in ▮▮▮▮ parents' bedroom beside their bed and was beside the parents' bed at the time of the incident on May 12, 2019.

28.     At around 2 a.m. on May 12, 2019, ▮▮▮▮ father, Ira Gregory, fed ▮▮▮▮ who was approximately six weeks old, and placed him in the inclined sleeper of the Play Yard.

29.     When placing ▮▮▮▮ into the sleeper of the Play Yard, Mr. Gregory put ▮▮▮▮ into the harness and connected the straps in accordance with the instructions provided by Defendants with the product.

30.     At around 6 a.m. that same day, Mr. Gregory woke up and did not see ▮▮▮▮ in the sleeper.

31.     Mr. Gregory discovered the removable inclined sleeper had disconnected from the top of the play yard and had collapsed.

32.     ▮▮▮▮ had fallen out of the inclined sleeper to the bottom of the play yard.

33.     ▮▮▮▮ was grey and not responsive.

34.     ▮▮▮▮ family called 911 and performed CPR on ▮▮▮▮ until first responders arrived at the residence.

35.     ▮▮▮▮ was taken to the hospital where he was admitted with brain injury, seizures and spasticity, cardiac arrest, and multi-organ dysfunction.

36.     ▮▮▮▮ remained in the hospital for several weeks, from the day of the incident until June 5, 2019, and remains under medical treatment and evaluation for significant and permanent injuries.

37.     As a result of the incident, ▮▮▮▮ suffered catastrophic injuries, including

8

significant brain injury and will need substantial medical assistance for the remainder of his life.

38.     Upon information and belief, no visible warning system or fail-safe exists to indicate to the user that the inclined sleeper component is properly and fully attached to the play yard.  Nor is there any warning system or fail-safe in the event that the inclined sleeper component collapses from the play yard.

39.     The inclined sleeper component also lacked shoulder straps or a restraint system or other fail-safe to prevent an infant from rolling over or falling head first from the sleeper.

40.     Upon information and belief, the Play Yard also came with no warnings or instructions regarding the risk of collapse of the inclined sleeper component or of the dangers of inclined sleepers, including suffocation and death.

41.     The warnings printed on the inclined sleeper attachment use the same grey colors as the rest of the inclined sleeper and so are difficult to see and hard to find. The printed warnings are not sufficient to warn consumers of the risks associated with the product.

42.     On June 27, 2019, Defendants Fisher-Price and Mattel recalled the removable inclined sleeper accessory included with the Ultra-Lite Day & Night Play Yard.

**COUNT I**
**(Negligent Design, Manufacture, and Distribution:  Defendants Fisher-Price and Mattel)**

43.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

44.     Defendants owed a duty to Plaintiff ████████ to exercise ordinary care to design, manufacture, and distribute a product, the subject Play Yard, that is reasonably safe for its intended purpose and for its reasonably foreseeable uses.

45.     At the time the Play Yard was sold or received for use by Plaintiff ████████,

9

Defendants breached their duty to exercise ordinary and reasonable care in the design, manufacture, and distribution of a reasonably safe product.

46.     The Play Yard was unreasonably dangerous for the use in which it would ordinarily be put, which includes as a sleeper for an infant child, or for some other reasonably foreseeable purpose, such as being used for overnight sleeping or as a crib-replacement for an infant child.

47.     Specifically, Defendants breached their duty through the inadequate design of the Play Yard, which made it unreasonably dangerous, including the following, upon information and belief:

   a.   The printed warnings on the Play Yard were difficult to see and hard to find and did not provide adequate warnings to consumers about the dangers of the product.

   b.   The Play Yard lacked a warning system and any means by which users of the Play Yard could confirm that removable inclined sleeper was locked to the top of the play yard;

   c.   Failing to anticipate non-secure sleeper-attachment and failing to design a fail-safe to prevent an infant child from falling from the sleeper, especially given the use of the product for young infants, who lack the mobility to self-correct, and the resultant chance for significant injury and/or death;

   d.   The removable inclined sleeper of the Play Yard did not have sufficient straps or other restraint system or fail-safe to prevent a child from falling head-first from the sleeper;

   e.   Any other negligent or unreasonably dangerous design that may be discovered and shown at trial.

48.     Defendants should have reasonably foreseen that consumers, such as Plaintiff and

10

Plaintiff's family, may not realize the dangers related to use of the inclined sleeper, and whether the removable inclined sleeper was securely attached to the play yard or may not realize that the inclined sleeper had disconnected from the play yard, even when the sleeper accessory and Play Yard are used normally. Defendants, who hold themselves out as world leaders in infant product design and safety, knew or should have known of these foreseeable hazards facing consumers, including Plaintiff.

49.     The design of the Play Yard was unreasonably dangerous when weighed against the minor cost of implementing an alternative design that could have provided visual warnings so a consumer would know whether the removable inclined sleeper was securely attached to the play yard.

50.     The design of the Play Yard was unreasonably dangerous when weighed against the minor cost of implementing an alternative design to include a fail-safe or fall prevention in the event that the removable inclined sleeper became disconnected from the play yard.

51.     As a direct and proximate result of the negligently designed and/or manufactured Play Yard, Plaintiff                 suffered severe and permanent injuries.

**COUNT II**
**(Breach of Warranty:  All Defendants)**

52.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

53.     Defendants are merchants within the definition of Virginia Code § 8.2-104(1).

54.     At the time the Play Yard was sold and/or distributed by Defendants, Defendants expressly warranted that the Play Yard was safe and fit for its intended purpose under foreseeable uses and conditions, and the Play Yard was manufactured and sold with an implied

warranty of merchantability.

55.     By placing the Play Yard into the stream of commerce and by selling the Play Yard

to ▮▮▮▮▮▮▮▮▮ family, Defendants expressly or impliedly warranted that:

   a.   The Play Yard was fit for the ordinary purpose for which it would be used, which
        was as a sleeper, play pen, and changing station for an infant.

   b.   The Play Yard was reasonably safe for its intended use, which was as an all-night
        sleeper, play pen, and changing station for an infant.

   c.   The Play Yard was reasonably safe for foreseeable circumstances which included,
        but was not limited to, being used as an overnight sleeper for an infant child.

56.     Upon the sale of the Play Yard to Plaintiff's family, Defendants breached an express
warranty, the implied warranty of merchantability, and the duty to exercise ordinary care to
design, manufacture, and distribute a reasonably safe product in that, upon information and
belief:

   a.   The Play Yard was unreasonably dangerous for the use in which it would ordinarily
        be put, which was as a sleeper for a new-born or young infant, or for some other
        reasonably foreseeable purpose, which included using the sleeper accessory of the
        Play Yard as an all-night sleeper for an infant;

   b.   The Play Yard was unreasonably dangerous when the product left the hands of
        Defendants because the product did not include sufficient warnings to warn of
        dangers or adequate warnings or instructions informing consumers of the potential
        for collapse of the removable inclined sleeper and no warnings to inform consumers
        whether the sleeper was securely attached to the play yard.  Such warnings were not
        provided even though the danger was foreseeable, even when the Play Yard was

12

used as intended. Instead of providing warnings, Defendants marketed and advertised the product as safe.

c. The unreasonably dangerous condition existed when the Play Yard left the hands of Defendants and;

d. The Play Yard was not changed in any way after the time of sale to Plaintiff's family.

57.      As a direct and proximate result of Defendants' breach of warranty, the foreseeable collapse of the removable inclined sleeper of the Play Yard caused Plaintiff severe and permanent injuries.

<u>COUNT III</u>
**(Breach of Duty to Warn of Known Dangers:  All Defendants)**

58.      Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

59.      Defendants owed Plaintiff a duty to exercise reasonable care to inform all users of the dangerous and defective condition of the Play Yard and/or of the facts which made the product susceptible to being dangerous and/or defective, in that Defendants, upon information and belief:

a. Knew or had reason to know that inclined sleepers were likely to be dangerous and sometimes deadly for sleeping infants;

b. Knew or had reason to know that the Play Yard, specifically, did not have a way for parents to make sure the removable inclined sleeper was securely locked on top of the play yard and knew there were no fail-safes to prevent the removable inclined sleeper from collapsing under foreseeable conditions;

13

  c. Knew or had reason to believe that purchasers and/or users of the Play Yard would not appreciate and/or realize the dangerous and defective condition of the Play Yard, including the hazard associated with an infant sleeping in an inclined sleeper, especially a removable one attached on top of a multi-use play yard.

60. Upon information and belief, Defendants breached their duty to Plaintiff when they failed to exercise reasonable care to inform consumers, such as ▮▮▮▮▮▮ family, of the dangerous and defective condition and/or of the facts which make the Play Yard likely to be dangerous and/or defective, including the dangerousness of inclined sleepers, the danger of failure of the removable inclined sleeper to the Play Yard, the absence of any fail-safes for the sleeper attachment to the Play Yard, the lack of any visible warning system of sleeper accessory attachment, and the risks of inadequate attachment of the sleeper accessory to the Play Yard. Defendants also breached their duty to Plaintiff because the warnings that were printed on the removable inclined sleeper were difficult for a consumer to locate; did not reasonably warn consumers of the dangers of using the inclined sleeper; were totally inadequate and failed to conspicuously identify the specific nature of the hidden hazards, and its severity, facing consumers, including Plaintiff; and were otherwise insufficient to warn Plaintiff of the dangers of the sleeper as may be shown at trial.

61. As a direct and proximate result of Defendants' negligence, Plaintiff sustained severe and permanent injuries.

**COUNT IV**
**(Negligent Failure to Recall: Defendants Fisher-Price and Mattel)**

62. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

14

63.     Defendants owed Plaintiff a duty to act as a reasonable person in recalling an unreasonably dangerous, defective, or unsafe product, such as the inclined sleeper component of the Play Yard.

64.     Upon information and belief, Defendants breached their duty to Plaintiff when they failed to timely recall inclined sleepers, including the removable inclined sleeper of the Play Yard, even when Defendants knew that inclined sleepers cause infant deaths, and/or in the exercise of reasonable care should have known, that the removable inclined sleeper of the Play Yard was dangerous and hazardous to purchasers and users under reasonably foreseeable circumstances.

65.     As a direct and proximate result of Defendants' negligent failure to recall inclined sleeper products, Plaintiff sustained significant and permanent injuries.

### COUNT V
### (Gross Negligence: All Defendants)

66.     Plaintiff incorporates by reference all paragraphs as if fully incorporated herein.

67.     At all times relevant to this action, Defendants owed a duty to design, sell, and deliver a product that is reasonably safe for its intended uses and for its reasonably foreseeable uses.

68.     Defendants acted with such an indifference to others, such as Plaintiff, as constitutes an utter disregard of caution amounting to a complete neglect of the safety of Plaintiff by, upon information and belief:

    a.  Failing to provide a warning system or fail-safe for the attachment of the removable inclined sleeper to the Play Yard;

    b.  Failing to provide sufficient warnings on the sleeper that adequately warned

consumers of dangers of the inclined sleeper; and, instead, using warnings that were totally inadequate and failed to conspicuously identify the specific nature of the hidden hazard and its severity; and further misleading consumers by marketing and advertising the product as safe, even though Defendants knew or should have known of the foreseeable hazard facing consumers, including Plaintiff.

     c.   Failing to timely recall inclined sleepers even though Defendants knew for years that such products caused infants significant injuries or death.

69.     Defendants took such actions despite knowing there was a significant likelihood that inclined sleepers are dangerous and that a collapse of a sleeping unit would cause significant injury or death to a young infant, who lacks the mobility to self-correct.

70.     As a direct and proximate result of Defendants' gross negligence, Plaintiff sustained significant and permanent injuries.

**COUNT VI**
**(Violation of Virginia Consumer Protection Act: All Defendants)**

71.     The allegations set forth in the preceding paragraphs are incorporated into this Count as though they were specifically and fully set forth.

72.     The transaction between Plaintiff and Defendants was a "Consumer transaction" as defined by Virginia Code § 59.1-198, and used in § 59.1-196 *et seq.* of the Code, in that it involved the advertisement and sale of goods and/or services to be used for personal, family, or household purposes.

73.     The transaction between the Plaintiff and Defendants was a sale of a "Children's product" as defined by Va. Code § 59.1-198, and used in § 59.1-196 *et seq.* of the Code,  as the

16

product is represented in its packaging, display promotion and/or advertising as appropriate for use by children 12 years of age or younger.

74.    Defendants, through their online product placement, advertisements, marketing and/or other representations, represented that the inclined sleeper had certain characteristics, uses and/or benefits, including that the dangerously defective product was safe for ordinary and intuitive use by parents in the manner represented by Defendants.

75.    Defendants, through their online product placement, advertisements, marketing and/or other representations, represented that its inclined sleeper was of a particular quality or grade, including that the dangerously defective product was safe for ordinary use and intuitive use by parents in the manner represented by Defendants.

76.    Defendants, through their online product placement, advertisements, marketing and/or other representations, used other false promise, false pretense and otherwise misrepresented the inclined sleeper, including that the dangerously defective product was safe for ordinary use and intuitive use by parents for the manner represented by Defendants.

77.    Defendants, through their online product placement, advertisements, marketing and/or other representations, placed a good in the stream of commerce which was defective in a manner and to a degree which jeopardized the life and safety of infants whose parents or caretakers used the inclined sleeper.

78.    The misrepresentations made by Defendants as to the quality of the inclined sleeper constituted violations of the Virginia Consumer Protection Act, Virginia Code § 59.1-196, *et seq.*

79.    On information and belief, the violations of the Consumer Protection Act identified herein were willful violations, as the Defendants had actual notice of the defects in the

17

inclined sleeper through their product testing or other quality assurance mechanisms, and/or did not perform adequate product testing or other actions in the quality assurance process, and/or did not perform product testing or other quality assurance actions which met the standard of care in the industry, and/or had actual notice of other similar injuries experienced by other infants in the inclined sleepers and/or other products which were similarly engineered in relevant respects to the inclined sleeper.

80.     As a result of Defendant's misrepresentations, Plaintiff was caused to experience severe and permanent injuries.

## COUNT VII
### (Compensatory Damages: All Defendants)

81.     Plaintiff incorporates by reference all paragraphs as if fully incorporated herein.

82.     As a direct and proximate result of the negligence of Defendants, Plaintiff sustained damages and will continue to sustain damages as alleged herein above, including:

    a.  Physical and emotional injuries;

    b.  Past and future pain and suffering;

    c.  Permanent impairment;

    d.  Scarring;

    e.  Emotional distress;

    f.  Lost earnings opportunity;

    g.  Past and future medical expenses; and

    h.  Such other further damages as may be shown at trial.

83.     As a proximate result of Defendants' behavior, Plaintiff is entitled to recover from the Defendants, jointly and severally, compensatory damages in the amount of thirty million

dollars ($30,000,000.00) or an amount to be determined at trial.

      **WHEREFORE**, the Plaintiff demands judgment against the Defendants in the sum of THIRTY MILLION DOLLARS ($30,000,000.00) for compensatory damages, or an amount to be determined at trial, trebled in accordance with § 59.1-204 of the Virginia Code, plus pre-judgment interest from the date of injury, post-judgment interest and costs, any additional damages under § 59.1-196 *et seq.* of the Virginia Code (1950, as amended), and her reasonable attorney's fees under § 59.1-204 of the Virginia Code (1950, as amended).

**TRIAL BY JURY IS DEMANDED**

A.P.G.

██████████████████████, an infant
by his next friend,
BRITTANY M. JONES,

By Counsel,

By:_____
      Emmet D. Alexander (VA Bar No. 41248)
      Michael R. Krol (VA Bar No. 80584)
      Alexander Law Group, PLC
      6601 Irongate Square, Suite A
      Richmond, Virginia 23234
      Telephone: (804) 271-1969
      Facsimile: (804) 271-0806
      michael@alexanderlawgroupplc.com
      *Counsel for Plaintiff*

**AFFIDAVIT—DEFAULT JUDGMENT**
**SERVICEMEMBERS CIVIL RELIEF ACT**
Commonwealth of Virginia    VA. CODE § 8.01-15.2

RECEIVED AND FILED
CIRCUIT COURT

MAY 0 7 2021
11 2:20
EDWARD F. JEWETT, CLERK
By ........................

Case No. ................................

RETURN DATE AND TIME

[x] Circuit Court    [x] General District Court
[ ] Juvenile and Domestic Relations District Court

City of Richmond
CITY OR COUNTY

........................ by next friend    v./In re:    Fisher-Price, Inc., et al.

I, ........... Michael R. Krol ..........., the undersigned affiant, states the following under oath:
PRINT NAME

[x] The defendant/respondent    [ ] is in military service.    [x] is not in military service.

The following facts support the statement above:

No natural person Defendants.

[ ] The affiant is unable to determine whether or not the defendant/respondent is in military service.

5/7/2021
DATE

AFFIANT'S SIGNATURE

The above-named affiant personally appeared this day before the undersigned, and upon duly being sworn, made oath that the facts stated in this affidavit are true to the best of his or her knowledge, information and belief.

........................
DATE

........................
[ ] CLERK  [ ] DEPUTY CLERK  [ ] MAGISTRATE  [ ] JUDGE  [ ] INTAKE OFFICER

**FOR NOTARY PUBLIC'S USE ONLY:**

State of .... Virginia .....    [x] City [ ] County of .... Richmond ....

Acknowledged, subscribed and sworn to before me this ... 7 ... day of .... May ...., 20 21

7869241
NOTARY REGISTRATION NUMBER

........................
NOTARY PUBLIC
(My commission expires: ... 6/30/24 ...)

CHERYL L. PURIS
NOTARY PUBLIC
REG # 7869241
COMMONWEALTH OF VIRGINIA
MY COMMISSION
EXPIRES ........

**NOTICE REGARDING APPOINTMENT OF COUNSEL TO REPRESENT ABSENT SERVICEMEMBER:**
Where appointment of counsel is required pursuant to 50 U.S.C. app. § 521 or 522, the court may assess attorneys' fees and costs against any party, as the court deems appropriate, and shall direct in its order which of the parties to the case shall pay such fees and costs, except the Commonwealth, unless it is the party that obtains the judgment.

**FOR COURT USE ONLY:**
**[ ] ORDER OF APPOINTMENT OF COUNSEL**
I find that appointment of counsel is required pursuant to 50 U.S.C. app. § 521 or 522 and therefore, I appoint the lawyer indicated below to represent the absent servicemember named as defendant/respondent above.

NAME, ADDRESS
OF COURT
APPOINTED
LAWYER

........................
NEXT HEARING DATE AND TIME

........................
DATE

........................
JUDGE

**[ ] STAY OF PROCEEDINGS**
I find that a stay of proceedings is required pursuant to 50 U.S.C. app. § 521 and, therefore, such a stay, for a minimum period of 90 days, is ordered until ........................
NEXT HEARING DATE AND TIME

........................
DATE

........................
JUDGE

FORM DC-418 REVISED 11/07

## COVER SHEET FOR FILING CIVIL ACTIONS

Case No. .........................................................

COMMONWEALTH OF VIRGINIA                                                      (CLERK'S OFFICE USE ONLY)

........A.P.G........................  City of Richmond ....................................................... Circuit Court

▮▮▮▮▮▮▮▮▮ an infant, by his mother and next friend,    v./In re:    Fisher-Price, Inc., et al.

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Brittany M. Jones | |

I, the undersigned [ ] plaintiff [ ] defendant [X] attorney for [X] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

**GENERAL CIVIL**

**Subsequent Actions**
- [ ] Claim Impleading Third Party Defendant
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Counterclaim
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Cross Claim
- [ ] Interpleader
- [ ] Reinstatement (other than divorce or driving privileges)
- [ ] Removal of Case to Federal Court

**Business & Contract**
- [ ] Attachment
- [ ] Confessed Judgment
- [ ] Contract Action
- [ ] Contract Specific Performance
- [ ] Detinue
- [ ] Garnishment

**Property**
- [ ] Annexation
- [ ] Condemnation
- [ ] Ejectment
- [ ] Encumber/Sell Real Estate
- [ ] Enforce Vendor's Lien
- [ ] Escheatment
- [ ] Establish Boundaries
- [ ] Landlord/Tenant
  - [ ] Unlawful Detainer
- [ ] Mechanics Lien
- [ ] Partition
- [ ] Quiet Title
- [ ] Termination of Mineral Rights

**Tort**
- [ ] Asbestos Litigation
- [ ] Compromise Settlement
- [ ] Intentional Tort
- [ ] Medical Malpractice
- [ ] Motor Vehicle Tort
- [X] Product Liability
- [ ] Wrongful Death
- [ ] Other General Tort Liability

**ADMINISTRATIVE LAW**
- [ ] Appeal/Judicial Review of Decision of (select one)
  - [ ] ABC Board
  - [ ] Board of Zoning
  - [ ] Compensation Board
  - [ ] DMV License Suspension
  - [ ] Employee Grievance Decision
  - [ ] Employment Commission
  - [ ] Local Government
  - [ ] Marine Resources Commission
  - [ ] School Board
  - [ ] Voter Registration
  - [ ] Other Administrative Appeal

**DOMESTIC/FAMILY**
- [ ] Adoption
  - [ ] Adoption – Foreign
- [ ] Adult Protection
- [ ] Annulment
  - [ ] Annulment – Counterclaim/Responsive Pleading
- [ ] Child Abuse and Neglect – Unfounded Complaint
- [ ] Civil Contempt
- [ ] Divorce (select one)
  - [ ] Complaint – Contested*
  - [ ] Complaint – Uncontested*
  - [ ] Counterclaim/Responsive Pleading
  - [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
- [ ] Separate Maintenance
  - [ ] Separate Maintenance Counterclaim

**WRITS**
- [ ] Certiorari
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Prohibition
- [ ] Quo Warranto

**PROBATE/WILLS AND TRUSTS**
- [ ] Accounting
- [ ] Aid and Guidance
- [ ] Appointment (select one)
  - [ ] Guardian/Conservator
  - [ ] Standby Guardian/Conservator
  - [ ] Custodian/Successor Custodian (UTMA)
- [ ] Trust (select one)
  - [ ] Impress/Declare/Create
  - [ ] Reformation
- [ ] Will (select one)
  - [ ] Construe
  - [ ] Contested

**MISCELLANEOUS**
- [ ] Amend Death Certificate
- [ ] Appointment (select one)
  - [ ] Church Trustee
  - [ ] Conservator of Peace
  - [ ] Marriage Celebrant
- [ ] Approval of Transfer of Structured Settlement
- [ ] Bond Forfeiture Appeal
- [ ] Declaratory Judgment
- [ ] Declare Death
- [ ] Driving Privileges (select one)
  - [ ] Reinstatement pursuant to § 46.2-427
  - [ ] Restoration – Habitual Offender or 3rd Offense
- [ ] Expungement
- [ ] Firearms Rights – Restoration
- [ ] Forfeiture of Property or Money
- [ ] Freedom of Information
- [ ] Injunction
- [ ] Interdiction
- [ ] Interrogatory
- [ ] Judgment Lien-Bill to Enforce
- [ ] Law Enforcement/Public Official Petition
- [ ] Name Change
- [ ] Referendum Elections
- [ ] Sever Order
- [ ] Taxes (select one)
  - [ ] Correct Erroneous State/Local
  - [ ] Delinquent
- [ ] Vehicle Confiscation
- [ ] Voting Rights – Restoration
- [ ] Other (please specify)

RECEIVED AND FILED
CIRCUIT COURT

MAY - 7 2021
2:20

EDWARD F. JEWETT, CLERK
BY ▮▮▮ D.C.

[X] Damages in the amount of $ 30,000,000.00 .................................................. are claimed.

5/7/2021
DATE

| [ ] PLAINTIFF  [ ] DEFENDANT | [X] ATTORNEY FOR  [X] PLAINTIFF  [ ] DEFENDANT |
|---|---|

PRINT NAME

ADDRESS/TELEPHONE NUMBER OF SIGNATOR

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

# ALEXANDER LAW GROUP, PLC
## ATTORNEYS AND COUNSELLORS AT LAW
### 6601 Irongate Square, Suite A
### Richmond, Virginia 23234
#### www.alexanderlawgroupplc.com

Emmet D. Alexander, Esquire
Michael R. Krol, Esquire
Robert G. Maury, Esquire

Telephone:   (804) 271-1969
Facsimile:   (804) 271-0806

May 7, 2021

**BY; HAND-DELIVERED**
Edward F. Jewett, Clerk
Circuit Court of the City of Richmond
John Marshall Courts Building
400 North Ninth Street
Richmond, VA 23219

Re:        █████████████, **an infant, by his mother and next friend, Brittany M.**
**Jones v. Fisher-Price, Inc., et al.**
Case No.:

Dear Mr. Jewett:

Enclosed please find an original and one copy of a complaint, a check for $351.00 to cover the filing fee, a Coversheet for Filing a Civil Action, and an Affidavit of Judgment – Servicemembers Civil Relief Act. We are not serving at this time.

Thank you for your assistance.  Please call if you have any questions.

Very truly yours,

W

Michael R. Krol

MRK/htl
Enclosures



RECEIVED AND FILED
CIRCUIT COURT

MAY - 7 2021
2:20
EDWARD F. JEWETT, CLERK
BY _____ D.C.

**VIRGINIA:**

RECEIVED AND FILED
CIRCUIT COURT
NOV 30 2021
EDWARD F. JEWETT, CLERK
BY _____ D.C.

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

A.P.G.

███████████████, an infant,                    :
by his mother and next friend,                  :
BRITTANY M. JONES                               :
                                                :
     Plaintiff,                          :          Case No. CL21-2040
                                                :
v.                                              :
                                                :
FISHER-PRICE, INC.; MATTEL, INC.;               :
WAL-MART.COM USA, LLC;                          :
WALMART INC.; WAL-MART                          :
ASSOCIATES, INC.; and WAL-MART                  :
STORES EAST, LP                                 :
                                                :
     Defendants.                         :

## <u>MOTION TO AMEND</u>

     NOW COMES the Plaintiff, by counsel, and moves this Court to Amend her Complaint, pursuant to Rule 1:8 of the Rules of Supreme Court of Virginia, and in support whereof states that the case has not been served on any Defendant, nor has service been requested, and further that Rule 1:8 states that leave to amend should be liberally granted in furtherance of the ends of justice.

     WHEREFORE the Plaintiff prays this Court grant him leave to amend his Complaint, which proposed Amended Complaint is attached hereto as Exhibit A, for the Amended Complaint to relate back to the date of the filing of the original Complaint, and for any other relief deems just and proper.

     This 29th day of November, 2021.

                             By:

                                 _____
                                     Counsel

Emmet D. Alexander (VA Bar No. 41248)
Robert G. Maury, Esquire (VSB No. 88233)
Michael R. Krol (VA Bar No. 80584)
Alexander Law Group, PLC
6601 Irongate Square, Suite A
Richmond, Virginia 23234
Telephone: (804) 271-1969
Facsimile: (804) 271-0806
michael@alexanderlawgroupplc.com

**V I R G I N I A :**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

A.P.G.

████████████████ **an infant,**     :
**by his mother and next friend,**     :
**BRITTANY M. JONES**     :
     :
     **Plaintiff,**     :       **Case No.  CL21-2040**
     :
**v.**     :
     :
**FISHER-PRICE, INC.**     :
**636 Girard Avenue**     :
**East Aurora, New York 14052**     :
     :
<u>**Serve:**</u> **Secretary of the Commonwealth**     :
     **Service of Process Department**     :
     **P.O. Box 2452**     :
     **Richmond, VA 23218-2452**     :
     :
     **and**     :
     :
**MATTEL, INC.**     :
**333 Continental Boulevard**     :
**El Segundo, CA 90245**     :
     :
<u>**Serve:**</u> **Secretary of the Commonwealth**     :
     **Service of Process Department**     :
     **P.O. Box 2452**     :
     **Richmond, VA 23218-2452**     :
     :
     **and**     :
     :
**WAL-MART.COM USA, LLC**     :
**7000 Marina Boulevard**     :
**Brisbane, California 94005**     :
     :
<u>**Serve:**</u> **CT Corporation System, R/A**     :
     **4701 Cox Road**     :
     **Suite 285**     :
     **Glen Allen, VA 23060-6808**     :
     :
     **and**     :

1



**WALMART INC.**                            :
**702 SW 8th Street**                       :
**BENTONVILLE, AR 72716-6209**             :
                                            :
<u>**Serve:**</u> **CT Corporation System, R/A**   :
     **4701 Cox Road**      :
     **Suite 285**          :
     **Glen Allen, VA 23060-6808**   :
                                            :
     **and**                :
                                            :
**WAL-MART STORES EAST, LP**               :
**702 SW 8TH STREET**                      :
**BENTONVILLE, AR 72716-0555**             :
                                            :
<u>**Serve:**</u> **CT Corporation System, R/A**   :
     **4701 Cox Road**      :
     **Suite 285**          :
     **Glen Allen, VA 23060-6808**   :
                                            :
     **and**                :
                                            :
**WAL-MART ASSOCIATES, INC.**              :
**702 SW 8th Street**                       :
**Bentonville, AR 72716-6209**             :
                                            :
<u>**Serve:**</u> **CT Corporation System, R/A**   :
     **4701 Cox Road**      :
     **Suite 285**          :
     **Glen Allen, VA 23060-6808**   :
                                            :
     **Defendants.**        :

## <u>FIRST AMENDED COMPLAINT</u>

**(Personal Injury; Products Liability; Breach of Warranty; Negligence; Gross Negligence; and Breach of Virginia Consumer Protection Act)**

COMES NOW Plaintiff ▮▮▮▮▮▮▮▮, a minor, by his next friend, Brittany M. Jones,

by counsel, and moves for Judgment against Defendant Fisher-Price, Inc. ("Fisher-Price");

Defendant Mattel, Inc. ("Mattel"); and Defendants Walmart Inc., Wal-Mart Stores East, LP,

2

Wal-Mart Associates, Inc., and Wal-Mart.com USA, LLC (collectively "Defendant Walmart") and alleges as follows:

## JURISDICTION AND VENUE

1.      This cause of action arises under the law of Virginia; therefore jurisdiction is appropriate in this Court.

2.      Personal jurisdiction is appropriate over Defendants pursuant to § 8.01-328.1 of the Virginia Code.

3.      Venue is appropriate in this Court under Virginia Code § 8.01-262 because Defendants Mattel and Fisher Price have an agent appointed to receive process by operation of law, and further all Defendants regularly conduct substantial business activity in this forum and there exists a practical nexus between the case and this forum.

## PARTIES

4.      Plaintiff █████████████ is a minor and, at the time of the filing of this lawsuit, a citizen and resident of Mecklenburg County in the Commonwealth of Virginia.  ██████ was born on March 29, 2019, and was approximately six weeks old on the day of the incident.

5.      Brittany M. Jones, is a citizen and resident of Mecklenburg County in the Commonwealth of Virginia, and brings this action on behalf of her natural son, ████████ ████, as his next friend.  Brittany M. Jones, as Next Friend of █████████████, represents that the real party-in-interest is ████████████.

6.      Upon information and belief, Defendant Fisher-Price was, and is at all times relevant herein, a business entity incorporated in the State of Delaware and headquartered in the State of New York.  Defendant Fisher-Price is also known as "Fisher-Price Brands" and is a subsidiary of Mattel, Inc.

3

7.      Upon information and belief, Defendant Fisher-Price was at all times relevant engaged in the business of designing, manufacturing, and/or distributing to merchants products including the dangerously defective product that directly and proximately caused Plaintiff's injuries.

8.      Upon information and belief, Defendant Mattel was, and is at all times relevant herein, a business entity incorporated in the State of Delaware and headquartered in the State of California.

9.      Upon information and belief, Defendants Fisher-Price and Mattel were at all times relevant herein engaged in the business of designing, manufacturing, importing, distributing, and/or selling to consumers the dangerously defective product that directly and proximately caused Plaintiff's injuries.

10.      Upon information and belief, Defendant Walmart Inc. is a corporation authorized and existing under the laws of the State of Delaware with its principal place of business in Bentonville, Arkansas. At all relevant times, Defendant Walmart Inc. was authorized to transact business and did business in Virginia on a regular and routine basis and at all times relevant herein engaged in the business of importing, distributing, and/or selling to consumers the dangerously defective product that directly and proximately caused Plaintiff's injuries.

11.      Upon information and belief, Defendant Wal-Mart.com USA, LLC is a limited liability company authorized and existing under the laws of the State of California with a principal office in Brisbane, California. At all relevant times, Defendant Wal-Mart.com USA, LLC was authorized to transact business in, operated its e-commerce business in, and regularly received business from consumers in Virginia and at all times relevant herein engaged in the business of importing, distributing, and/or selling to consumers the dangerously defective

4

product that directly and proximately caused Plaintiff's injuries.

12.     Upon information and belief, Defendant Wal-Mart Associates, Inc. is a corporation existing under the laws of the State of Delaware with its principal place of business in Arkansas. At all relevant times, Defendant Wal-Mart Associates, Inc. did and was authorized to transact business in Virginia on a regular and routine basis and at all times relevant herein engaged in the business of importing, distributing, and/or selling to consumers the dangerously defective product that directly and proximately caused Plaintiff's injuries.

13.     Upon information and belief, Defendant Wal-Mart Stores East, LP is a limited partnership authorized and existing under the laws of the State of Delaware with its principal place of business in Arkansas. At all relevant times, Defendant Walmart Stores, Inc. did and was authorized to transact business in Virginia on a regular and routine basis and at all times relevant herein engaged in the business of importing, distributing, and/or selling to consumers the dangerously defective product that directly and proximately caused Plaintiff's injuries.

14.     Defendants Walmart Inc.; Wal-Mart Stores East, LP; Wal-Mart Associates, Inc.; and Wal-mart.com USA, LLC will collectively be referred to herein as "Defendant Walmart."

15.     At all relevant times, Defendants acted by and through their subsidiaries, employees, agents, and servants, who were acting within the scope of their employment, agency, or master-servant relationship with Defendants.

## FACTS

### The Product

16.     The Defendants Fisher Price and Mattel first marketed and sold inclined sleepers in the United States in 2009 with its first inclined sleeper product, the Rock 'N Play Sleeper.

17.     Inclined sleepers are products designed to allow an infant to sleep at an incline

5

between 10 and 30 degrees.

18.      Defendants Fisher-Price, Mattel, and Walmart marketed these products as safe for all-night sleep.

19.      The product category was popular and Defendants continued to develop and market additional products with inclined sleepers, including the product at issue in this case—the Ultra-Lite Day and Night Play Yard.

20.      The Ultra-Lite Day and Night Play Yard (hereinafter "Play Yard") is a portable multi-tasking product—an inclined sleeper, changing station, and play yard all in one—made for newborn babies who are less than 35" in height.

21.      The Play Yard includes a removable inclined sleeper that attaches to the top of the play yard at four points of contact. The inclined sleeper attachment has soft padding and hangs suspended over the play yard. *See* figure below.



22.     At all relevant times and upon information and belief, Defendants marketed and advertised the product at issue, as well as its other inclined sleeper products, as safe for its intended purposes: an inclined all-night sleeper, changing station, and play yard.

### Incident

23.     Plaintiff                    was the appropriate age and size for the Play Yard, as advertised by Fisher-Price, at the time of the incident.

24.              parents purchased the play yard online from Walmart specifically for             and shortly before he was born on or around March 14, 2019.

25.     At the time of the incident, Plaintiff                    was approximately six weeks old, lacked the mobility to self-correct his position, and was not yet able to roll himself over onto his side or back.

7

26.     At all relevant times, ████ parents used and assembled the Play Yard in accordance with the instructions provided by Defendants with the product.

27.     The Play Yard was typically kept in ████ parents' bedroom beside their bed and was beside the parents' bed at the time of the incident on May 12, 2019.

28.     At around 2 a.m. on May 12, 2019, ████ father, Ira Gregory, fed ████, who was approximately six weeks old, and placed him in the inclined sleeper of the Play Yard.

29.     When placing ████ into the sleeper of the Play Yard, Mr. Gregory put ████ into the harness and connected the straps in accordance with the instructions provided by Defendants with the product.

30.     At around 6 a.m. that same day, Mr. Gregory woke up and did not see ████ in the sleeper.

31.     Mr. Gregory discovered the removable inclined sleeper had disconnected from the top of the play yard and had collapsed.

32.     ████ had fallen out of the inclined sleeper to the bottom of the play yard.

33.     ████ was grey and not responsive.

34.     ████ family called 911 and performed CPR on ████ until first responders arrived at the residence.

35.     ████ was taken to the hospital where he was admitted with brain injury, seizures and spasticity, cardiac arrest, and multi-organ dysfunction.

36.     ████ remained in the hospital for several weeks, from the day of the incident until June 5, 2019, and remains under medical treatment and evaluation for significant and permanent injuries.

37.     As a result of the incident, ████ suffered catastrophic injuries, including

8

significant brain injury and will need substantial medical assistance for the remainder of his life.

38.     Upon information and belief, no visible warning system or fail-safe exists to indicate to the user that the inclined sleeper component is properly and fully attached to the play yard. Nor is there any warning system or fail-safe in the event that the inclined sleeper component collapses from the play yard.

39.     The inclined sleeper component also lacked shoulder straps or a restraint system or other fail-safe to prevent an infant from rolling over or falling head first from the sleeper.

40.     Upon information and belief, the Play Yard also came with no warnings or instructions regarding the risk of collapse of the inclined sleeper component or of the dangers of inclined sleepers, including suffocation and death.

41.     The warnings printed on the inclined sleeper attachment use the same grey colors as the rest of the inclined sleeper and so are difficult to see and hard to find. The printed warnings are not sufficient to warn consumers of the risks associated with the product.

42.     On June 27, 2019, Defendants Fisher-Price and Mattel recalled the removable inclined sleeper accessory included with the Ultra-Lite Day & Night Play Yard.

## COUNT I
**(Negligent Design, Manufacture, and Distribution:  Defendants Fisher-Price and Mattel)**

43.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

44.     Defendants owed a duty to Plaintiff Alexio Gregory to exercise ordinary care to design, manufacture, and distribute a product, the subject Play Yard, that is reasonably safe for its intended purpose and for its reasonably foreseeable uses.

45.     At the time the Play Yard was sold or received for use by Plaintiff ▮▮▮▮▮▮▮,

9

Defendants breached their duty to exercise ordinary and reasonable care in the design, manufacture, and distribution of a reasonably safe product.

46.     The Play Yard was unreasonably dangerous for the use in which it would ordinarily be put, which includes as a sleeper for an infant child, or for some other reasonably foreseeable purpose, such as being used for overnight sleeping or as a crib-replacement for an infant child.

47.     Specifically, Defendants breached their duty through the inadequate design of the Play Yard, which made it unreasonably dangerous, including the following, upon information and belief:

    a.  The printed warnings on the Play Yard were difficult to see and hard to find and did not provide adequate warnings to consumers about the dangers of the product.

    b.  The Play Yard lacked a warning system and any means by which users of the Play Yard could confirm that removable inclined sleeper was locked to the top of the play yard;

    c.  Failing to anticipate non-secure sleeper-attachment and failing to design a fail-safe to prevent an infant child from falling from the sleeper, especially given the use of the product for young infants, who lack the mobility to self-correct, and the resultant chance for significant injury and/or death;

    d.  The removable inclined sleeper of the Play Yard did not have sufficient straps or other restraint system or fail-safe to prevent a child from falling head-first from the sleeper;

    e.  Any other negligent or unreasonably dangerous design that may be discovered and shown at trial.

48.     Defendants should have reasonably foreseen that consumers, such as Plaintiff and

10

Plaintiff's family, may not realize the dangers related to use of the inclined sleeper, and whether the removable inclined sleeper was securely attached to the play yard or may not realize that the inclined sleeper had disconnected from the play yard, even when the sleeper accessory and Play Yard are used normally. Defendants, who hold themselves out as world leaders in infant product design and safety, knew or should have known of these foreseeable hazards facing consumers, including Plaintiff.

49.     The design of the Play Yard was unreasonably dangerous when weighed against the minor cost of implementing an alternative design that could have provided visual warnings so a consumer would know whether the removable inclined sleeper was securely attached to the play yard.

50.     The design of the Play Yard was unreasonably dangerous when weighed against the minor cost of implementing an alternative design to include a fail-safe or fall prevention in the event that the removable inclined sleeper became disconnected from the play yard.

51.     As a direct and proximate result of the negligently designed and/or manufactured Play Yard, Plaintiff             suffered severe and permanent injuries.

## COUNT II
### (Breach of Warranty:  All Defendants)

52.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

53.     Defendants are merchants within the definition of Virginia Code § 8.2-104(1).

54.     At the time the Play Yard was sold and/or distributed by Defendants, Defendants expressly warranted that the Play Yard was safe and fit for its intended purpose under foreseeable uses and conditions, and the Play Yard was manufactured and sold with an implied

11

warranty of merchantability.

55.    By placing the Play Yard into the stream of commerce and by selling the Play Yard to ███████████ family, Defendants expressly or impliedly warranted that:

    a.  The Play Yard was fit for the ordinary purpose for which it would be used, which was as a sleeper, play pen, and changing station for an infant.

    b.  The Play Yard was reasonably safe for its intended use, which was as an all-night sleeper, play pen, and changing station for an infant.

    c.  The Play Yard was reasonably safe for foreseeable circumstances which included, but was not limited to, being used as an overnight sleeper for an infant child.

56.    Upon the sale of the Play Yard to Plaintiff's family, Defendants breached an express warranty, the implied warranty of merchantability, and the duty to exercise ordinary care to design, manufacture, and distribute a reasonably safe product in that, upon information and belief:

    a.  The Play Yard was unreasonably dangerous for the use in which it would ordinarily be put, which was as a sleeper for a new-born or young infant, or for some other reasonably foreseeable purpose, which included using the sleeper accessory of the Play Yard as an all-night sleeper for an infant;

    b.  The Play Yard was unreasonably dangerous when the product left the hands of Defendants because the product did not include sufficient warnings to warn of dangers or adequate warnings or instructions informing consumers of the potential for collapse of the removable inclined sleeper and no warnings to inform consumers whether the sleeper was securely attached to the play yard. Such warnings were not provided even though the danger was foreseeable, even when the Play Yard was

12

used as intended. Instead of providing warnings, Defendants marketed and advertised the product as safe.

c. The unreasonably dangerous condition existed when the Play Yard left the hands of Defendants and;

d. The Play Yard was not changed in any way after the time of sale to Plaintiff's family.

57.     As a direct and proximate result of Defendants' breach of warranty, the foreseeable collapse of the removable inclined sleeper of the Play Yard caused Plaintiff severe and permanent injuries.

**COUNT III**
**(Breach of Duty to Warn of Known Dangers:  All Defendants)**

58.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

59.     Defendants owed Plaintiff a duty to exercise reasonable care to inform all users of the dangerous and defective condition of the Play Yard and/or of the facts which made the product susceptible to being dangerous and/or defective, in that Defendants, upon information and belief:

a. Knew or had reason to know that inclined sleepers were likely to be dangerous and sometimes deadly for sleeping infants;

b. Knew or had reason to know that the Play Yard, specifically, did not have a way for parents to make sure the removable inclined sleeper was securely locked on top of the play yard and knew there were no fail-safes to prevent the removable inclined sleeper from collapsing under foreseeable conditions;

13

c.  Knew or had reason to believe that purchasers and/or users of the Play Yard would not appreciate and/or realize the dangerous and defective condition of the Play Yard, including the hazard associated with an infant sleeping in an inclined sleeper, especially a removable one attached on top of a multi-use play yard.

60.  Upon information and belief, Defendants breached their duty to Plaintiff when they failed to exercise reasonable care to inform consumers, such as ███████ family, of the dangerous and defective condition and/or of the facts which make the Play Yard likely to be dangerous and/or defective, including the dangerousness of inclined sleepers, the danger of failure of the removable inclined sleeper to the Play Yard, the absence of any fail-safes for the sleeper attachment to the Play Yard, the lack of any visible warning system of sleeper accessory attachment, and the risks of inadequate attachment of the sleeper accessory to the Play Yard. Defendants also breached their duty to Plaintiff because the warnings that were printed on the removable inclined sleeper were difficult for a consumer to locate; did not reasonably warn consumers of the dangers of using the inclined sleeper; were totally inadequate and failed to conspicuously identify the specific nature of the hidden hazards, and its severity, facing consumers, including Plaintiff; and were otherwise insufficient to warn Plaintiff of the dangers of the sleeper as may be shown at trial.

61.  As a direct and proximate result of Defendants' negligence, Plaintiff sustained severe and permanent injuries.

## COUNT IV
### (Negligent Failure to Recall: Defendants Fisher-Price and Mattel)

62.  Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

14

63.    Defendants owed Plaintiff a duty to act as a reasonable person in recalling an unreasonably dangerous, defective, or unsafe product, such as the inclined sleeper component of the Play Yard.

64.    Upon information and belief, Defendants breached their duty to Plaintiff when they failed to timely recall inclined sleepers, including the removable inclined sleeper of the Play Yard, even when Defendants knew that inclined sleepers cause infant deaths, and/or in the exercise of reasonable care should have known, that the removable inclined sleeper of the Play Yard was dangerous and hazardous to purchasers and users under reasonably foreseeable circumstances.

65.    As a direct and proximate result of Defendants' negligent failure to recall inclined sleeper products, Plaintiff sustained significant and permanent injuries.

**COUNT V**
**(Gross Negligence: All Defendants)**

66.    Plaintiff incorporates by reference all paragraphs as if fully incorporated herein.

67.    At all times relevant to this action, Defendants owed a duty to design, sell, and deliver a product that is reasonably safe for its intended uses and for its reasonably foreseeable uses.

68.    Defendants acted with such an indifference to others, such as Plaintiff, as constitutes an utter disregard of caution amounting to a complete neglect of the safety of Plaintiff by, upon information and belief:

   a.   Failing to provide a warning system or fail-safe for the attachment of the removable inclined sleeper to the Play Yard;

   b.   Failing to provide sufficient warnings on the sleeper that adequately warned

15

consumers of dangers of the inclined sleeper; and, instead, using warnings that were totally inadequate and failed to conspicuously identify the specific nature of the hidden hazard and its severity; and further misleading consumers by marketing and advertising the product as safe, even though Defendants knew or should have known of the foreseeable hazard facing consumers, including Plaintiff.

    c.   Failing to timely recall inclined sleepers even though Defendants knew for years that such products caused infants significant injuries or death.

69.     Defendants took such actions despite knowing there was a significant likelihood that inclined sleepers are dangerous and that a collapse of a sleeping unit would cause significant injury or death to a young infant, who lacks the mobility to self-correct.

70.     As a direct and proximate result of Defendants' gross negligence, Plaintiff sustained significant and permanent injuries.

**COUNT VI**
**(Violation of Virginia Consumer Protection Act: All Defendants)**

71.     The allegations set forth in the preceding paragraphs are incorporated into this Count as though they were specifically and fully set forth.

72.     The transaction between Plaintiff and Defendants was a "Consumer transaction" as defined by Virginia Code § 59.1-198, and used in § 59.1-196 *et seq.* of the Code, in that it involved the advertisement and sale of goods and/or services to be used for personal, family, or household purposes.

73.     The transaction between the Plaintiff and Defendants was a sale of a "Children's product" as defined by Va. Code § 59.1-198, and used in § 59.1-196 *et seq.* of the Code,  as the

16

product is represented in its packaging, display promotion and/or advertising as appropriate for use by children 12 years of age or younger.

74.     Defendants, through their online product placement, advertisements, marketing and/or other representations, represented that the inclined sleeper had certain characteristics, uses and/or benefits, including that the dangerously defective product was safe for ordinary and intuitive use by parents in the manner represented by Defendants.

75.      Defendants, through their online product placement, advertisements, marketing and/or other representations, represented that its inclined sleeper was of a particular quality or grade, including that the dangerously defective product was safe for ordinary use and intuitive use by parents in the manner represented by Defendants.

76.     Defendants, through their online product placement, advertisements, marketing and/or other representations, used other false promise, false pretense and otherwise misrepresented the inclined sleeper, including that the dangerously defective product was safe for ordinary use and intuitive use by parents for the manner represented by Defendants.

77.     Defendants, through their online product placement, advertisements, marketing and/or other representations, placed a good in the stream of commerce which was defective in a manner and to a degree which jeopardized the life and safety of infants whose parents or caretakers used the inclined sleeper.

78.     The misrepresentations made by Defendants as to the quality of the inclined sleeper constituted violations of the Virginia Consumer Protection Act, Virginia Code § 59.1-196, *et seq.*

79.     On information and belief, the violations of the Consumer Protection Act identified herein were willful violations, as the Defendants had actual notice of the defects in the

17

inclined sleeper through their product testing or other quality assurance mechanisms, and/or did not perform adequate product testing or other actions in the quality assurance process, and/or did not perform product testing or other quality assurance actions which met the standard of care in the industry, and/or had actual notice of other similar injuries experienced by other infants in the inclined sleepers and/or other products which were similarly engineered in relevant respects to the inclined sleeper.

80.    As a result of Defendant's misrepresentations, Plaintiff was caused to experience severe and permanent injuries.

## COUNT VII
## (Gross Negligence and Willful and Wanton Conduct: All Defendants)

81.    Plaintiff incorporates by reference all paragraphs as if fully incorporated herein.

82.    Plaintiff alleges that all defendants were grossly negligent and acted willfully and wantonly as a result of their actions that proximately resulted in Plaintiff's injuries and discussed above.

83.    Gross negligence is that degree of negligence which shows such an indifference to others, such as the Plaintiff, as constitutes an utter disregard of caution amounting to a complete neglect of the safety of another person, such as the Plaintiff. It is such negligence as would shock fair-minded people.

84.    Willful and wanton conduct is acting consciously in disregard of another person's rights, or acting with a reckless indifference to the consequences to another person, such as the Plaintiff when the defendant is aware of his conduct and is also aware, from his knowledge of existing circumstances and conditions, that his conduct would probably result in injury to another.

18

85.    Plaintiff alleges that defendants were grossly negligent by showing a complete indifference for the safety and health of the Plaintiff and others similarly situated, as a result of failing to warn Plaintiff of the risks associated with the inclined sleep attachment, and by marketing the product and continuing to market and sell the product. Defendants marketed the product, sold the product, and continued to market inclined sleep products, including the subject one, even though Defendants knew for over a decade that the products were linked to infant deaths. Defendants recklessly failed to conduct adequate safety testing of the product and all other similar products. Defendants recklessly failed to include any fail safes or fall risk prevention given the high risk nature of the product. Defendants misrepresented the safety of the product even when they knew of infant deaths. Defendants intentionally blocked efforts to regulate the product in a way that would have made the product safer for infants because it would have decreased profits for the Defendants. Defendants knowingly did all of this to keep collecting profit from a product that was very profitable for the Defendants.

86.    Defendants' complete indifference for the safety of the Plaintiff and all others similarly situated is evident given that Defendants had research reasonably available to them about safe sleep surfaces for infants and given the Defendants' experience and reputation in the industry that Defendants advertised and which parents relied on in believing Defendants' products to be safe for their babies.

87.    Plaintiff's injuries are a proximate result of Defendants' gross negligence and willful and wanton conduct.

## COUNT VIII
### (Compensatory Damages: All Defendants)

88.    Plaintiff incorporates by reference all paragraphs as if fully incorporated herein.

19

89.     As a direct and proximate result of the negligence of Defendants, Plaintiff sustained damages and will continue to sustain damages as alleged herein above, including:

   a.   Physical and emotional injuries;

   b.   Past and future pain and suffering;

   c.   Permanent impairment;

   d.   Scarring;

   e.   Emotional distress;

   f.   Lost earnings opportunity;

   g.   Past and future medical expenses; and

   h.   Such other further damages as may be shown at trial.

90.     As a proximate result of Defendants' behavior, Plaintiff is entitled to recover from the Defendants, jointly and severally, compensatory damages in the amount of thirty million dollars ($30,000,000.00) or an amount to be determined at trial.

   **WHEREFORE**, the Plaintiff demands judgment against the Defendants in the sum of THIRTY MILLION DOLLARS ($30,000,000.00) for compensatory damages, or an amount to be determined at trial, trebled in accordance with § 59.1-204 of the Virginia Code, and punitive damages in the amount of ONE DOLLAR ($1.00), plus pre-judgment interest from the date of injury, post-judgment interest and costs, any additional damages under § 59.1-196 *et seq.* of the Virginia Code (1950, as amended), and her reasonable attorney's fees under § 59.1-204 of the Virginia Code (1950, as amended).

**TRIAL BY JURY IS DEMANDED**

███████████████ an infant
by his next friend,
BRITTANY M. JONES,

By Counsel,

_____
Emmet D. Alexander (VA Bar No. 41248)
Michael R. Krol (VA Bar No. 80584)
Robert G Maury (VA Bar No. 88233)
Alexander Law Group, PLC
6601 Irongate Square, Suite A
Richmond, Virginia 23234
Telephone: (804) 271-1969
Facsimile: (804) 271-0806
michael@alexanderlawgroupplc.com
*Counsel for Plaintiff*

21



# ALEXANDER LAW GROUP, PLC
## ATTORNEYS AND COUNSELLORS AT LAW
6601 Irongate Square, Suite A
Richmond, Virginia 23234
www.alexanderlawgroupplc.com

Emmet D. Alexander, Esquire
Michael R. Krol, Esquire
Robert G. Maury, Esquire

Telephone:   (804) 271-1969
Facsimile:    (804) 271-0806
info@alexanderlawgroupplc.com

November 29, 2021

Edward F. Jewett, Clerk
Richmond Circuit Court
400 N. Ninth Street
Richmond, VA  23219

      Re:   █████████ an infant, by his mother and next friend, Brittany M. Jones v. Fisher Price, Inc. et al.
               Case No.: CL21-2040

Dear Mr. Jewett:

Enclosed please find Plaintiff's Motion to Amend Complaint and Order in the above-referenced matter. Please submit the Order to the appropriate Judge for entry.

Thank you for your assistance.  Please call if you have any questions.

Very truly yours,

Michael R. Krol

MRK/vsp
Enclosures

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

| | | |
|---|---|---|
| ███████████ an infant, | : | |
| by his mother and next friend, | : | |
| BRITTANY M. JONES | : | |
| | : | |
|     Plaintiff, | : | Case No. 21-2040 |
| | : | |
| v. | : | |
| | : | |
| FISHER-PRICE, INC.; MATTEL, INC.; | : | |
| WAL-MART.COM USA, LLC; | : | |
| WALMART INC.; WAL-MART | : | |
| ASSOCIATES, INC.; and WAL-MART | : | |
| STORES EAST, LP | : | |
| | : | |
|     Defendants. | : | |

### ORDER

NOW COMES the Plaintiff, by counsel, on the Plaintiff's Motion to Amend her

Complaint, and this Court, having considered the Motion, GRANTS the Plaintiff's Motion and it is

ORDERED that the Amended Complaint attached as Exhibit A to the Motion to Amend be

considered the operative Complaint in this matter and that this Amended Complaint relate back to

the date of the original filing.

    The Clerk will kindly certify this Order to counsel of record.

                        ENTER:          /       /

                        _____

                        Judge

1

I asked for this:

Emmet D. Alexander (VA Bar No. 41248)
Michael R. Krol (VA Bar No. 80584)
Alexander Law Group, PLC
6601 Irongate Square, Suite A
Richmond, Virginia 23234
Telephone: (804) 271-1969
Facsimile: (804) 271-0806
michael@alexanderlawgroupplc.com

**V I R G I N I A :**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

| | | |
|---|---|---|
| ████████████ an infant, | : | |
| by his mother and next friend, | : | |
| BRITTANY M. JONES | : | |
| | : | |
|     Plaintiff, | : | Case No. 21-2040 - 5 |
| | : | |
| v. | : | |
| | : | |
| FISHER-PRICE, INC.; MATTEL, INC.; | : | |
| WAL-MART.COM USA, LLC; | : | |
| WALMART INC.; WAL-MART | : | |
| ASSOCIATES, INC.; and WAL-MART | : | |
| STORES EAST, LP | : | |
| | : | |
|     Defendants. | : | |

## <u>ORDER</u>

NOW COMES the Plaintiff, by counsel, on the Plaintiff's Motion to Amend her

Complaint, and this Court, having considered the Motion, GRANTS the Plaintiff's Motion and it is

ORDERED that the Amended Complaint attached as Exhibit A to the Motion to Amend be

considered the operative Complaint in this matter and that this Amended Complaint relate back to

the date of the original filing.

    The Clerk will kindly certify this Order to counsel of record.


ENTER:    12 / 21 / 21


                Judge

1

I asked for this:

_____

Emmet D. Alexander (VA Bar No. 41248)
Michael R. Krol (VA Bar No. 80584)
Alexander Law Group, PLC
6601 Irongate Square, Suite A
Richmond, Virginia 23234
Telephone: (804) 271-1969
Facsimile: (804) 271-0806
michael@alexanderlawgroupplc.com

# COMMONWEALTH OF VIRGINIA



RICHMOND CITY CIRCUIT COURT
Civil Division
400 NORTH 9TH STREET
RICHMOND  VA  23219



RECEIVED AND FILED
CIRCUIT COURT
JAN 2 8 2022
EDWARD F. JEWETT, CLERK
BY _____ D.C.

Proof of Service

Virginia:
In the RICHMOND CITY CIRCUIT COURT

Case number: 760CL21002040-00
Service number: 004
Service filed: May 07, 2021
Judge:

Served by: SPECIAL PROCESS SERVER
Style of case: ███████████████ INF vs FISHER PRICE INC

Service on: FISHER PRICE INC
SERVE: SECRETARY OF
THE COMMONWEALTH
1111 EAST BROAD STREET,
FOURTH FLOOR
RICHMOND VA 23219

Attorney: KROL, MICHAEL R
6601 IRONGATE SQUARE, SUITE A
RICHMOND VA 23234
804.271.1969

Instructions:   [X] INTERROGATORIES
[X] REQ FOR PRODUCTION OF DOCS
[X] REQ FOR ADMISSIONS
Returns shall be made hereon, showing service of Summons issued Friday, January 21, 2022 with a copy of the
Amended Complaint filed Friday, May 07, 2021 attached.


Hearing date  :
Service issued: Friday, January 21, 2022

For Sheriff Use Only

## AFFIDAVIT OF SERVICE

**State of Virginia**                     **County of Richmond (City)**                     **Circuit Court**

Case Number: 760CL21002040-00

Plaintiff:
█████████████ **an infant, by his mother and next friend, Brittany M. Jones**

vs.

Defendant:
**Fisher-Price, Inc., et al.**

Received by Hester Process Service, Inc. to be served on **Fisher Price Inc; Secretary of the Commonwealth, 1111 East Broad Street, 4th Floor, Richmond, VA 23219.**

I, David M. Hester, Sr., being duly sworn, depose and say that on the **26th day of January, 2022** at **10:39 am, I:**

**POSTED** by attaching a true copy of the **Summons, First Amended Complaint, Request for Production of Documents, Interrogatories and Request for Admissions** with the date and hour of service endorsed thereon by me, to a conspicuous place on the property at the address of: **1111 East Broad Street, 4th Floor, Richmond, VA 23219.**

**Additional Information pertaining to this Service:**
Placed in the drop box per COVID-19 policy.

I certify that I am over the age of 18, not a party to the above-named action, nor otherwise interested in the subject matter in controversy.

Subscribed and sworn to before me on the 27th day of January, 2022 by the affiant who is personally known to me.

_____
Notary public

**Commonwealth of Virginia
County of Chesterfield
My Commission Expires 11/30/24**

_____
**David M. Hester, Sr.**
Process Server

**Hester Process Service, Inc.
P.O. Box 37128
N. Chesterfield, VA 23234
(804) 271-0298**

Our Job Serial Number: HTR-2022000684

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.1z



# COMMONWEALTH OF VIRGINIA



### RICHMOND CITY CIRCUIT COURT
Civil Division
400 NORTH 9TH STREET
RICHMOND VA 23219



RECEIVED AND FILED
CIRCUIT COURT

JAN 2 8 2022

EDWARD F. JEWETT, CLERK
BY _____ D.C.

Virginia:                                    Proof of Service
In the RICHMOND CITY CIRCUIT COURT

Case number: 760CL21002040-00
Service number: 002
Service filed: May 07, 2021
Judge:

Served by: SPECIAL PROCESS SERVER
Style of case: ██████████ vs FISHER PRICE INC
Service on: MATTEL INC                  Attorney: KROL, MICHAEL R
          SERVE: SECRETARY OF                    6601 IRONGATE SQUARE, SUITE A
          THE COMMONWEALTH                       RICHMOND VA 23234
          1111 EAST BROAD STREET,                804.271.1969
          FOURTH FLOOR
          RICHMOND VA 23219

Instructions:  [X] INTERROGATORIES
               [X] REQ FOR PRODUCTION OF DOCS
               [X] REQ FOR ADMISSIONS
Returns shall be made hereon, showing service of Summons issued Friday, January 21, 2022 with a copy of the
Amended Complaint filed Friday, May 07, 2021 attached.

Hearing date  :
Service issued: Friday, January 21, 2022

_____
                              For Sheriff Use Only

## <u>AFFIDAVIT OF SERVICE</u>

**State of Virginia**                **County of Richmond (City)**                **Circuit Court**

Case Number: 760CL21002040-00

Plaintiff:
█████████████ **an infant, by his mother and next friend, Brittany M. Jones**

vs.

Defendant:
**Fisher-Price, Inc., et al.**

Received by Hester Process Service, Inc. to be served on **Mattel Inc; Secretary of the Commonwealth, 1111 East Broad Street, 4th Floor, Richmond, VA 23219.**

I, David M. Hester, Sr., being duly sworn, depose and say that on the **26th day of January, 2022** at **10:39 am, I:**

**POSTED** by attaching a true copy of the**Summons, First Amended Complaint, Request for Production of Documents, Interrogatories and Request for Admissions** with the date and hour of service endorsed thereon by me, to a conspicuous place on the property at the address of: **1111 East Broad Street, 4th Floor, Richmond, VA 23219.**

**Additional Information pertaining to this Service:**
Placed in the drop box per COVID-19 policy.

I certify that I am over the age of 18, not a party to the above-named action, nor otherwise interested in the subject matter in controversy.

Subscribed and sworn to before me on the 27th day of January, 2022 by the affiant who is personally known to me.

_____
Notary public

**David M. Hester, Sr.**
Process Server

**Hester Process Service, Inc.**
**P.O. Box 37128**
**N. Chesterfield, VA 23234**
**(804) 271-0298**

Our Job Serial Number: HTR-2022000686

Commonwealth of Virginia
County of Chesterfield
My Commission Expires 11/30/24

DONNA FAYE HESTER
NOTARY PUBLIC
MY COMMISSION NUMBER 237445
COMMONWEALTH OF VIRGINIA

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.1z



# COMMONWEALTH OF VIRGINIA



RICHMOND CITY CIRCUIT COURT
Civil Division
400 NORTH 9TH STREET
RICHMOND  VA  23219

RECEIVED AND FILED
CIRCUIT COURT
JAN 2 8 2022
EDWARD F JEWETT CLERK
BY_____D.C.

Proof of Service

Virginia:
In the RICHMOND CITY CIRCUIT COURT

Case number: 760CL21002040-00
Service number: 001
Service filed: May 07, 2021
Judge:

Served by: SPECIAL PROCESS SERVER
Style of case ▇▇▇▇▇INF vs FISHER PRICE INC
Service on: WAL MART U S A LLC
            SERVE: CT CORPORATION SYSTEM,
            REGISTERED AGENT
            4701 COX ROAD, SUITE 285
            GLEN ALLEN VA 23060

Attorney: KROL, MICHAEL R
6601 IRONGATE SQUARE, SUITE A
RICHMOND VA 23234
804.271.1969

Instructions: [X] INTERROGATORIES
[X] REQ FOR PRODUCTION OF DOCS
[X] REQ FOR ADMISSIONS
Returns shall be made hereon, showing service of Summons issued Friday, January 21, 2022 with a copy of the
Amended Complaint filed Friday, May 07, 2021 attached.

Hearing date  :
Service issued: Friday, January 21, 2022

For Sheriff Use Only



# Service Authorization
# CT Corporation System

CT Corporation System ("CT") is registered agent for service of process for numerous corporations and similar entities. CT receives the process only in its capacity as a commercial registered agent. The individuals designated below are employees of CT Corporation System and in receiving the process, do so only on CT's behalf and in CTs capacity as registered agent.

**PLEASE NOTE:** The Code of Virginia §§ 13.1-634 provides in part:
"Registered office and registered agent.
A....
B. The sole duty of the registered agent is to forward to the corporation at its last known address any process, notice or demand that is served on the registered agent."

***As such, neither CT Corporation System, nor its individual employees designated below, have the duty or the ability to respond to any legal process, notice or demand that is served on CT's clients.***

The following natural persons are designated in the office of the registered agent upon whom any process, notice or demand may be served:

Katie Bush                  Teresa Brown                  Julie Parrish

This authorization does not certify the receipt or acceptance of any specific process

Teresa Brown
Team Leader
CT Corporation System

State of Virginia
County of Henrico

This day personally appeared before me, Teresa Brown, who name is signed above and who, being first duly sworn, upon her oath, state that the foregoing Affidavit is true to the best of her knowledge and belief.

Subscribed and sworn before me this 25th day of March, 2021.

Notary Public

# AFFIDAVIT OF SERVICE

**State of Virginia**                    **County of Richmond (City)**                    **Circuit Court**

Case Number: 760CL21002040-00

Plaintiff:
██████████ **an infant, by his mother and next friend, Brittany M. Jones**

vs.

Defendant:
**Fisher-Price, Inc., et al.**

Received by Hester Process Service, Inc. to be served on **Wal Mart U S A LLC; CT Corporation System, Registered Agent, 4701 Cox Road, Suite 285, Glen Allen, VA 23060**.

I, Christopher S. Hester, being duly sworn, depose and say that on the **26th day of January, 2022** at **1:10 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Summons, First Amended Complaint, Request for Production of Documents, Interrogatories and Request for Admissions** with the date and hour of service endorsed thereon by me, to: **Julie Parrish, Designated Employee** at the address of: **4701 Cox Road, Suite 285, Glen Allen, VA 23060**, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, not a party to the above-named action, nor otherwise interested in the subject matter in controversy.

Subscribed and sworn to before me on the 27th day of January, 2022 by the affiant who is personally known to me.

_____
Notary public

DONNA FAYE HESTER
NOTARY PUBLIC
MY COMMISSION NUMBER 237445
COMMONWEALTH OF VIRGINIA

**Commonwealth of Virginia**
**County of Chesterfield**
**My Commission Expires 11/30/24**

_____
**Christopher S. Hester**
Process Server

**Hester Process Service, Inc.**
**P.O. Box 37128**
**N. Chesterfield, VA 23234**
**(804) 271-0298**

Our Job Serial Number: HTR-2022000687

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.1z



VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

███████████████ and infant,

By his mother and next friend,

BRITTANY M. JONES.

        Plaintiff,

v.                                 Case No. CL21-2040

FISHER-PRICE, INC, et al.

        Defendants.

## CONSENT ORDER

Plaintiff ███████████ and infant, by his mother and next friend, Brittany M. Jones, by counsel and Defendants Wal-Mart.com, USA, LLC, Walmart, Inc., Wal-Mart Stores East, LP, and Wal-Mart Associates, Inc., (collectively, "Walmart"), by counsel, hereby agree that the deadline for the Walmart entities to file responsive pleadings shall be extended to February 28, 2022, and that the deadline for the Walmart entities to provide objections and answers to the Plaintiff's Interrogatories, Requests for Production and Requests for Admission shall be extended to February 28, 2022.[1]

      Finding that Walmart and the Plaintiff agree to this extension, it is ORDERED that the deadlines shall be extended as set forth herein.

_____ Date_____

**JUDGE**

---

[1] Walmart maintains the right to remove the case in accordance with 28 U.S.C. §§ 1441 and 1446.

We ask for this:

D. Cameron Beck, Jr. (VSB No. 39195)
Sarah E. Gallo (VSB No. 94757)
McCandlish Holton, PC
P.O. Box 796
1111 E. Main Street, Suite 2100
Richmond, Virginia 23219
Tel.: (804) 344-6322 (Beck)
Tel.: (804 819-1193 (Gallo)
Fax: (804) 819-1163
cbeck@lawmh.com
sgallo@lawmh.com
*Counsel for Walmart Defendants*


Seen and Agreed:

Emmet D. Alexander (VSB Bar No. 41248
Michael R. Krol, Esquire (VSB Bar No. 80584)
Robert G. Maury (VSB No. 88233)
ALEXANDER LAW GROUP, PLC
6601 Irongate Square, Suite A
Richmond, Virginia 23234
Tel.: (804) 271-1969
Fax.: (804) 271-0806
michael@alexanderlawgroupplc.com
*Counsel for Plaintiff*

D. Cameron Beck

Direct Dial: 804.344.6322

Facsimile: 804.775.3800

E-Mail: cbeck@lawmh.com



McCandlish Holton

February 18, 2022

Hon. Edward F. Jewett, Clerk
Richmond Circuit Court
400 North Ninth Street
John Marshall Courts Building
Richmond, VA 23219

Re:     ███████████ **an infant by his mother and next friend,**
        **Brittany M. Jones v. Fisher-Price, Inc., et al.**
        **Case No. CL21-2040**

Dear Mr. Jewett,

Enclosed please find the attached Order to be entered by the Court.  Once the appropriate Judge signs the order, please forward copies to counsel of record.

Thank you.

Sincerely,

D.  Cameron Beck

DCB/slm
Enclosures
cc:     Michael E. Krol, Esq. (via U.S. Mail)



**AFFIDAVIT FOR SERVICE OF PROCESS ON THE SECRETARY OF THE COMMONWEALTH**

Case No. .......... CL21-2040 ..........

Commonwealth of Virginia      VA. CODE §§ 8.01-301, -310, -329; 55-218.1; 57-51

.................................................. City of Richmond .................................................. Circuit Court

| | | |
|---|---|---|
| ████████ by his mother and next friend Brittany Jones | v. | Fisher-Price, Inc. |
| c/o Alexander Law Group, PLC | | c/o C T Corporation System, d/b/a Registered Agent |
| | | 28 Liberty Street, New York, NY 10005 |

TO THE PERSON PREPARING THIS AFFIDAVIT: You must comply with the appropriate requirements listed on the back of this form.

Attachments:      [✗] Summons and Complaint       [ ] Notice
                                                    [ ] ................

RECEIVED AND FILED
CIRCUIT COURT
87  FEB 23 2022
EDWARD F. JEWETT, CLERK
BY _____ D.C.

I, the undersigned Affiant, state under oath that
[✗] the above-named defendant      [ ] ................
whose last known address is      [✗] same as above [ ]
1. [✗] is a non-resident of the Commonwealth of Virginia or a foreign corporation and Virginia Code § 8.01-328.1(A) applies (see NON-RESIDENCE GROUNDS REQUIREMENT on page 2).
2. [ ] is a person whom the party seeking service, after exercising due diligence, has been unable to locate (see DUE DILIGENCE REQUIREMENT ON BACK)

_____ is the hearing date and time on the attached process or notice (if applicable).

2/4/2022
DATE          [ ] PARTY [✗] PARTY'S ATTORNEY [ ] PARTY'S AGENT [ ] PARTY'S REGULAR AND *BONA FIDE* EMPLOYEE

State of  Virginia      [ ] City [✗] County of  Chesterfield
Acknowledged, subscribed and sworn to before me this day by  Michael Krol

2/4/20__
DATE
                                                                        PRINT NAME OF SIGNATORY
Valerie Susanne Perkins
Commonwealth of Virginia
Notary Public
Commission No. 760751          [ ] MAGISTRATE [✗] NOTARY PUBLIC
My Commission Expires 06/30/2023
Notary Registration No. 760751 .   My commission expires: 6/30/2023

[✗] Verification by the clerk of court of the date of filing of the certificate of compliance is requested. A self-addressed stamped envelope was provided to the clerk at the time of filing this Affidavit.

NOTICE TO THE RECIPIENT from the Office of the Secretary of the Commonwealth of Virginia:
    You are being served with this notice and attached pleadings under Section 8.01-329 of the Code of Virginia which designates the Secretary of the Commonwealth as statutory agent for Service of Process. The Secretary of the Commonwealth's ONLY responsibility is to mail, by certified mail, return receipt requested, the enclosed papers to you. If you have any questions concerning these documents, you may wish to seek advice from a lawyer.
SERVICE OF PROCESS IS EFFECTIVE ON THE DATE WHEN SERVICE IS MADE ON THE SECRETARY OF THE COMMONWEALTH.

**CERTIFICATE OF COMPLIANCE**
I, the undersigned, Clerk in the Office of the Secretary of the Commonwealth, hereby certify the following:
1. On  FEB 10 2022 ........................, legal service in the above-styled case was made upon the Secretary of the Commonwealth, as statutory agent for persons to be served in accordance with Section 8.01-329 of the Code of Virginia, as amended.
2. On  FEB 17 2022 ........................, papers described in the Affidavit and a copy of this Affidavit were forwarded by certified mail, return receipt requested, to the party designated to be served with process in the Affidavit.

_____
SERVICE OF PROCESS CLERK, DESIGNATED
BY THE AUTHORITY OF THE SECRETARY OF THE COMMONWEALTH

**AFFIDAVIT FOR SERVICE OF PROCESS ON THE SECRETARY OF THE COMMONWEALTH**

Case No. .......................... CL21-2040

Commonwealth of Virginia    VA. CODE §§ 8.01-301, -310, -329; 55-218.1; 57-51

................................ City of Richmond ................................ Circuit Court

▓▓▓▓▓▓▓ by his mother and next friend Brittany Jones    v.    Mattel, Inc.

c/o Alexander Law Group, PLC    c/o The Corporation Trust Company, d/b/a Registered Agent

1209 Orange Street, Wilmington, DE 19801

TO THE PERSON PREPARING THIS AFFIDAVIT: You must comply with the appropriate requirements listed on the back of this form.

Attachments:    [✗] Summons and Complaint    [ ] Notice
[ ] ..........................

RECEIVED AND FILED
CIRCUIT COURT
8:20 FEB 23 2022
EDWARD F. JEWETT, CLERK
BY _____ D.C.

I, the undersigned Affiant, state under oath that
[✗] the above-named defendant    [ ] ..........................
whose last known address is    [✗] same as above    [ ] ..........................

1.  [✗] is a non-resident of the Commonwealth of Virginia or a foreign corporation and Virginia Code § 8.01-328.1(A) applies (see NON-RESIDENCE GROUNDS REQUIREMENT on page 2).

2.  [ ] is a person whom the party seeking service, after exercising due diligence, has been unable to locate (see DUE DILIGENCE REQUIREMENT ON BACK)

.......................... is the hearing date and time on the attached process or notice (if applicable).

2/11/2022
DATE    [ ] PARTY [✗] PARTY'S ATTORNEY [ ] PARTY'S AGENT [ ] PARTY'S REGULAR AND *BONA FIDE* EMPLOYEE

State of Virginia    City/County of Chesterfield
Acknowledged, subscribed and sworn to before me this day by Michael Kmol
PRINT NAME OF SIGNATORY

2/14/2022
DATE    [ ] CLERK  [ ] MAGISTRATE  [✗] NOTARY PUBLIC
Notary Registration No. 7667571    My commission expires: 6/30/2023

*Valerie Susann Perkins, Notary Commonwealth of Virginia Notary No. 7667571 My Commission Expires 06/30/2023*

[✗] Verification by the clerk of court of the date of filing of the certificate of compliance is requested. A self-addressed stamped envelope was provided to the clerk at the time of filing this Affidavit.

NOTICE TO THE RECIPIENT from the Office of the Secretary of the Commonwealth of Virginia:
You are being served with this notice and attached pleadings under Section 8.01-329 of the Code of Virginia which designates the Secretary of the Commonwealth as statutory agent for service of process. The Secretary of the Commonwealth's ONLY responsibility is to mail, by certified mail, return receipt requested, the enclosed papers to you. If you have any questions concerning these documents, you may wish to seek advice from a lawyer.
SERVICE OF PROCESS IS EFFECTIVE ON THE DATE WHEN SERVICE IS MADE ON THE SECRETARY OF THE COMMONWEALTH.

**CERTIFICATE OF COMPLIANCE**
I, the undersigned, Clerk in the Office of the Secretary of the Commonwealth, hereby certify the following:
1.  On FEB 10 2022 .........................., legal service in the above-styled case was made upon the Secretary of the Commonwealth, as statutory agent for persons to be served in accordance with Section 8.01-329 of the Code of Virginia, as amended.
2.  On FEB 17 2022 .........................., papers described in the Affidavit and a copy of this Affidavit were forwarded by certified mail, return receipt requested, to the party designated to be served with process in the Affidavit.

_____
SERVICE OF PROCESS CLERK, DESIGNATED
BY THE AUTHORITY OF THE SECRETARY OF THE COMMONWEALTH

FORM CC-1418 (MASTER, PAGE ONE OF TWO) 07/13