IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

A.P.G., *an infant,*
*by his mother and next friend,*
BRITTANY M. JONES,
     Plaintiff,

v.                                                     Civil No.  3:22cv112 (DJN)

FISHER-PRICE, INC., *et al.*,
     Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's Amended Unopposed Motion to Seal

the Plaintiff's Unopposed Motion for Approval of Settlement and Release (ECF No. 109

("Motion to Seal")), moving the Court to seal an unredacted copy of Plaintiff's Unopposed

Motion for Approval of Settlement and Release (ECF No. 108 ("Motion for Approval")).

Defendants do not oppose either motion.  Plaintiff filed the Motion to Seal on June 14, 2023, and

the seven-day time period for filing a response or objection has passed, with no responses nor

objections filed.  Accordingly, pursuant to Local Civil Rule 5(C), the Motion to Seal stands

unopposed and ripe for the Court's review.  At issue is whether certain monetary settlement

terms of this personal injury case involving a minor plaintiff, which requires judicial approval

pursuant to Va. Code § 8.01–424, must remain under seal.  For the reasons set forth below, the

Court DENIES Plaintiff's Motion to Seal.

## BACKGROUND AND PROCEDURAL POSTURE

This matter arises from an incident that occurred on May 12, 2019, when Plaintiff alleges

that minor child A.P.G. incurred suffocation-related injuries when an Ultra-Lite Day & Nite Play

Play Yard (the "Play Yard") collapsed and caused A.P.G. to fall from the Play Yard's sleeper attachment into the mesh-enclosed bottom. (Motion for Approval at 1.) Defendants Fisher-Price, Inc., Mattel, Inc., Wal-Mart.com USA, LLC, Wal-Mart Associates, Inc., and Wal-Mart Stores East, LP, developed, marketed and/or sold the Play Yard at issue. (*Id.*) Plaintiff alleged throughout the pendency of this litigation that Defendants remain liable, pursuant to various theories of liability, including that the product contained a design defect, for A.P.G's injuries. (*Id.*) Defendants maintain that the product neither contained any defect nor caused A.P.G.'s injuries. (*Id.*)

On May 25, 2023, the parties agreed to settle this matter for a monetary sum and additional terms of settlement, as set forth in the Memorandum of Understanding Regarding Settlement. (*Id.*) On June 8, 2023, Plaintiff filed Plaintiff's Unopposed Motion to Seal the Plaintiff's Unopposed Motion for Approval of Settlement and Release, (ECF No. 100), moving the Court to seal in its entirety Plaintiff's Motion for Approval. Plaintiff also filed a completely redacted Motion for Approval. (ECF No. 98.) On June 9, 2023, the Court granted Plaintiff's Motion to Seal, (ECF No. 105), sealing in its entirety Plaintiff's Motion for Approval. The same day, the Court also scheduled a Final Settlement Approval Hearing for August 15, 2023. (ECF No. 104). Upon further review of the pleadings and the Motion for Approval filed under seal, the Court modified its June 9, 2023 Order, ordering Plaintiff to file a redacted Motion for Approval, redacting solely necessary, confidential information. (ECF No. 105.) The Court also temporarily sealed the Motion for Approval until June 14, 2023, by which time the parties were required to submit new motions to seal. (ECF No. 106.)

On June 14, 2023, Plaintiff re-filed her Motion for Approval, (ECF No. 108), redacting three numbers: (1) the total settlement amount; (2) the anticipated disbursement amount for

2

minor child A.P.G.; and (3) the anticipated amount of attorney's fees, as determined by a percentage of the total recovery. All other aspects of the Motion for Approval remained unsealed and open to the public. In conjunction, Plaintiff filed an Amended Motion to Seal, (ECF No. 109), and Plaintiff's Notice of Filing of Motion to Seal Confidential Documents and Exhibits, (ECF No. 110). No objections or responses in opposition were filed, by Defendant nor any other parties. The matter now stands ripe for review.

## STANDARD OF REVIEW

The public has a right of access to judicial records that derives from the First Amendment and the common law. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988) (acknowledging that the right derives from two independent sources)); *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 (1978) (recognizing the common law right). "[D]ocuments reviewed in connection with a motion for court approval of a settlement constitute 'judicial records.'" *White v. Bonner*, 2010 WL 4625770, at *1 (E.D.N.C. Nov. 4, 2010) (applying rights of access to the parties' motion to seal a settlement agreement in a wrongful death action). This right creates a strong presumption that court documents and proceedings regarding court-approved settlements remain available for public inspection. *See In re Knight Publ'g*, 743 F.2d 231, 234 (4th Cir. 1984) (discussing the "strong presumption of openness"); *see also K.S. v. Ambassador Programs, Inc.*, 2010 WL 3565481, at *2 (E.D. Va. Sept. 3, 2010) ("While this right is not absolute, courts have uniformly emphasized that sealing should be the relatively rare exception, not the common practice.") (citing *Stone*, 855 F.2d at 182). Thus, district courts must satisfy procedural and substantive requirements before ordering the sealing of judicial records.

3

"[B]efore a district court may seal any court documents, . . . it must (1) provide notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000). Once the parties and the Court have met such procedural requirements, courts turn to whether the common law or the First Amendment's right of access applies.

While both the First Amendment and the common law establish a right of access, the different sources offer a varying level of protection: the "common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). The common law presumption of access may be overcome if the party's privacy interests outweigh the public interest in access, *see Stone*, 855 F.2d at 180, whereas the First Amendment presumption of access may be overcome only by a "compelling government interest . . . narrowly tailored to serve that interest." *Rushford*, 846 F.2d at 253 (applying the more rigorous First Amendment analysis). Thus, if a document should be sealed under the First Amendment, it is unnecessary for courts to also engage in the common law balancing test. *See M.G.M ex rel. Mabe v. Keurig Green Mountain, Inc.*, 2022 WL 6170557, at *2 (M.D.N.C. Oct. 7, 2022) (determining that the court did not need to decide the right of access source because the document should be sealed under the "more stringent First Amendment right of access").

In weighing the party's interests in sealing against the public's dual source right of access, courts should consider: (1) "whether the records are sought for improper purposes," (2) "whether release would enhance the public's understanding of an important historical event" and

4

(3) "whether the public has already had access to the information contained in the records." *See In re Knight Publ'g*, 743 F.2d at 235 (considering these factors while engaging in the common law balancing test); *Mears v. Atl. Se. Airlines, Inc.*, 2014 WL 5018907, at *3 (E.D.N.C. Oct. 7, 2014) (using these factors to consider the First Amendment right of access). Additionally, courts should consider whether actual harm will result from disclosure. *See Doe v. Pub. Citizen*, 749 F.3d 246, 270 (4th Cir. 2014) (holding that "unsubstantiated or speculative claims of harm" do not outweigh the rights of access). With these principles in mind, the Court now turns to the sealing question presented in this case.

## ANALYSIS

First, the threshold, procedural requirements for sealing have been satisfied here. Pursuant to Local Civil Rule 5(C), Plaintiff filed Plaintiff's Notice of Filing of Motion to Seal Confidential Documents and Exhibits, accompanying the Motion to Seal. (ECF No. 111 (the "Notice").) The Notice laid out all required information and the requirements for objections or pleadings in support. Additionally, Rule 5(C) states that "any person objecting to the motion must file an objection with the Clerk within seven (7) days after the filing of the motion to seal and that if no objection is filed in a timely manner, the Court may treat the motion as uncontested." Local Civ. R. 5(C). The Court received no objections and shall treat the motion as uncontested.

Additionally, pursuant to Rule 5(C) and Fourth Circuit case law, courts must consider less drastic alternatives to granting a motion to seal. *E.g.*, *Ashcraft*, 218 F.3d at 302. Here, Plaintiff seeks the redaction of three figures: the total settlement amount, A.P.G.'s anticipated disbursement amount and Plaintiff's attorneys' fee request. A request for such limited redaction already satisfies the Court's requirements of considering less drastic means than sealing the

entire document. *See* Local Civ. R. 5(C) ("Anyone seeking to file a document or other material under seal must make a good faith effort to redact or seal only as much as necessary to protect legitimate interests. Blanket sealing of entire briefs, documents, or other papers is rarely appropriate."). As such, the Court now turns to weighing the parties' interests in privacy against the public right of access.

### 1.    Interests at Issue

The common law presumption of access may be overcome if the party's privacy interests outweigh the public interest in access, *see Stone*, 855 F.2d at 180, whereas the First Amendment presumption of access may be overcome only by a "compelling government interest . . . narrowly tailored to serve that interest." *Rushford*, 846 F.2d at 253. In determining whether a motion to seal should be granted, a court must first determine the privacy interests at issue and whether they outweigh the public interest in access, under the common law, or whether they are compelling and narrowly tailored and can overcome the presumption of access, under the First Amendment.

Plaintiff argues that sealing proves appropriate for two reasons. First, that "a key non-monetary term for the settlement was for the settlement amount to be confidential" and that courts recognize the importance of enforcing confidentiality provisions. Motion to Seal at 1–2. Second, Plaintiff requests that the settlement amount remain confidential to protect minor child A.P.G. from public disclosure that could expose A.P.G. to financial fraudsters. The Court finds that Plaintiff cannot meet either burden, despite the weighty interests at stake.

### A.    Confidentiality

Addressing each in turn, the Court first notes that courts have well-established that parties' agreements of confidentiality "[are] an insufficient reason to seal judicial records."

*M.G.M.*, 2022 WL 6170557, at *2 (collecting cases, but noting that confidentiality remains "an appropriate fact to consider").  While Plaintiff's argument stands true that courts recognize and enforce confidentiality provisions of settlement agreements as a matter of public policy, this argument must fall in the face of statutorily mandated court approval of such settlements, for several reasons.  First, the general rule in favor of settling out of court does not sufficiently outweigh the public's interest in judicial access.  *K.M.*, 2010 WL 3565481, at *3 (citing *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986) (holding that the interest in confidential settlements generally does not outweigh the public-access interest regarding judicially approved settlements)).  Second, "[s]ettlement agreements . . . do not generally become part of the public record because they do not ordinarily require judicial consideration[,]" however, this case "involves a minor plaintiff, and the laws of the Commonwealth of Virginia require that parties seek judicial approval in settling any case involving a minor[.]"  *Id.* (citing Va. Code § 8.01–424).  Thus, the relevance of a confidentiality provision diminishes, when, like here, the parties must have the terms of the settlement approved in open court and give notice of such terms to the public to leave room for objections.  And, lastly, Rule 5(C) explicitly states that "[a]greement of the parties that a document . . . should be filed under seal or the designation of . . . material as confidential . . . is not, by itself, sufficient justification for allowing a document . . . to be filed under seal."  Local Civ. R. 5(C).

Thus, the assumption of confidentiality of terms of a settlement does not apply to the instant case, which requires judicial approval under § 8.01–424, and the Court finds that the settlement agreement's confidentiality provision alone does not constitute a compelling government interest under the First Amendment nor a sufficient interest to outweigh the common law right of access.

### B.    A.P.G.'s Privacy

Plaintiff's second interest, the privacy rights of minor child A.P.G., weigh more heavily in favor of sealing portions of the Motion to Approve, but still do not sufficiently outweigh the public's right of access, under either source of right.

The Supreme Court has held that "safeguarding the physical and psychological well-being of a minor" constitutes a compelling state interest. *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 1, 6 (1986). And courts repeatedly adopt and apply rules that "reflect a strong public policy favoring the special protection of minors and their privacy where sensitive and possibly stigmatizing matters are concerned." *Webster Groves Sch. Dist. v. Pulitzer Publ'g. Co.*, 898 F.2d 1371, 1375 (8th Cir. 1990) (holding that a minor's "privacy interest and the state's interest in protecting minors from the public dissemination of hurtful information" outweighed both rights of access).

When handling motions to seal involving minors, courts have "held that minors' privacy interests in medical and financial information" sufficiently outweigh the "common law right of access." *See Mears*, 2014 WL 5018907, at *3 (collecting cases). For example, a settlement amount may be sealed because the amount "implies the relative severity and expected duration" of the minor's injuries, which may lead to "public ridicule and embarrassment of the minor." *Id.* at *2. Additionally, disclosure of a settlement amount may "expose the minor to scam artists, financial predators, and other fraudsters." *Mabe*, 2022 WL 6170557, at *3; *see also Webb v. Murphy-Brown, LLC*, 2021 WL 1342523, at *2 (E.D.N.C. April 9, 2021) (disclosing the financial information of minors may expose the child to "scrutiny as a result of the information being released"). Courts also consider that "naming the parent . . . of the child would still inevitably lead to identification of the child." *M.P. v. Schwartz*, 853 F. Supp. 164, 168 (D. Md.

8

1994); *Webb*, 2021 WL 1342523, at *2 (noting that when "parents are also plaintiffs in the case . . . use of the minor's initials does not provide adequate protection for their identity and confidential financial information").

However, unlike other cases where there is a risk that the child "may be stigmatized and humiliated if the sensitive information in the record is made public," *Webster Groves*, 898 F.2d at 1377, no similar risk presents here. Plaintiff merely seeks to redact the monetary terms of the settlement. Courts in this district have held, in relation to settlement approval hearings pursuant to § 8.01–424, that when a minor continues to be referred to only by his or her initials, the child's "identity will remain confidential . . . and revealing the dollar amounts that [the minor] is to receive will not affect [his or] her level of public exposure."[1] *K.S.*, 2010 WL 3565481, at *3. This continues even in the face of naming of a parent as a next friend, as here. Furthermore, A.P.G.'s mother's name appeared on the face of the Complaint and every subsequent pleading, thus providing no new incentive for sealing at the settlement stage. And, unlike other cases where the extent of a minor child's injuries have been sealed throughout the proceedings, the Complaint, (ECF No. 1-2), lays out the extent of A.P.G.'s injuries and makes a very substantial monetary demand. Therefore, the settlement amount does not "impl[y] the relative severity and expected duration," *Mears*, 2014 WL 5018907, at *2, of A.P.G.'s injuries as the Complaint already laid them bare.

Moreover, while the public has no general right to know the potential financial windfall that A.P.G. may receive as a result of the settlement, "the potential for use of the information for

---

[1]    *But see Jeter Estate of Patterson v. Correct Care Sols., LLC*, 2020 WL 13551437, at *3 (M.D.N.C. July 16, 2020) ("The sealing of the limited portion [relating to the monetary terms] of the [Settlement] Agreement will protect the privacy of the minors receiving payments, and their privacy interest outweighs the public's interest in learning the minors' identities and financial information.").

an improper purpose," *In re Knight Publ'g*, 743 F.2d at 235, does not appear to be present due to the structure of the settlement terms and A.P.G.'s disbursement amount being placed into a special needs trust.  Motion for Approval at 2–3.  Thus, the risk of "scam artists, financial predators, and other fraudsters" appears purely speculative.  *Mabe*, 2022 WL 6170557, at *3.

Additionally, Virginia courts have held that, under Virginia law, courts cannot seal from the public records nor redact terms of an infant settlement which requires approval under § 8.01–424.  *Brown v. Tashman*, 2020 WL 8835045, at *1 (Va. Cir. Ct. April 21, 2020).  While this Court applies federal procedural law under *Erie R.R. Co v. Tompkins*, 304 U.S. 64 (1938), the state court's reasoning still proves instructive.  Analogizing to wrongful death settlements, which also require approval and cannot be redacted, *see supra*, the *Brown* Court found that since minor plaintiff settlements require approval at the discretion of the judge, they too must remain unsealed, even if conducted under confidential mediation.  2020 WL 8835045, at *2–4.  Finally, the court held that absent specific statutory authority or a "particularized concern of harm[,]" the records must remain open:  "Risks of damage 'stated in the abstract' are insufficient to justify sealing a record."  *Id.* at *4.  Like here, "Plaintiff raised a general concern that the child and his family could be target by financial scammers.  This, however, is the sort of abstract risk disapproved [of] . . . Additionally, there is no credible, particularized evidence of the child's medical condition [in the settlement] necessary to justify a complete sealing of the settlement terms."  *Id.*  Thus, both federal and state courts require more than a generalized interest, untethered from any particularized risk, to overcome the heavy presumption of openness and to give rise to a narrowly tailored, compelling government interest.

In so finding, the Court does not dismiss the privacy concerns of A.P.G. and his parents nor does it attempt to diminish the weighty interests of the privacy and rights of juveniles who

must appear in court.  However, the ephemeral risks posed in Plaintiff's Motion prove insufficient to require sealing of the settlement terms.  Despite this, the Court's charge to approve this settlement, pursuant to Va. Code § 8.01–424, should assure the public and the parties that A.P.G.'s best interest shall drive the Court's analysis and approval of the settlement agreement.  The Court also notes that the Settlement Approval Hearing, as required by Virginia statute, will be open to the public, further undermining the efficacy of Plaintiff's request to maintain the confidentiality of the settlement figures.

### C.    Commonwealth's Lien

Perhaps most importantly, the Court also emphasizes that parties outside of this litigation possess a stake in the settlement agreement and its proceeds.  Thus, the public holds more than just a general "interest in knowing whether or not the Court has appropriately protected the interests of the minor in evaluating the settlement."  *See M.G.M.*, 2022 WL 6170557, at *3 (noting the general public interest under the corresponding North Carolina law approving juvenile settlements).  A term of the settlement agreement allocates "$69,493.69 for the Virginia Department of Medical Assistance [("DMAS")] in satisfaction of its state Medicaid lien."  Motion for Approval at 2.  DMAS originally claimed a lien of $318,302.65 for services provided to A.P.G. as a result of the injury sustained on May 12, 2019.  *Id.* at 3.  The Virginia Office of the Attorney General agreed to compromise the lien as a condition of settlement.  *Id.* at 3.

Generally, the Attorney General can exercise the right to compromise a Commonwealth's lien and dispute, pursuant to Va. Code § 2.2–514.  However, unlike a pedestrian private settlement, the assumption of full confidentiality does not attach to such compromises:  "No settlement . . . shall be made subject to a confidentiality agreement that prohibits the Commonwealth . . . from disclosing the amount of such settlement except where such

11

confidentiality agreement is imposed by a court of competent jurisdiction or otherwise is required by law." § 2.2–514.  Moreover, Virginia courts have also held that in the context of private settlements which require judicial review, the confidentiality provisions that may otherwise govern do not apply with equal force.  In *Perreault v. Free-Lance Star*, 666 S.E.2d 352, 356 (Va. 2008), the Virginia Supreme Court held that judicial review of settlements in the wrongful death context removes any expectations of confidentiality.  *Kwang Li (Jo) Chan v. Commonwealth* extended this lack of confidentiality to a motion to reduce a lien claimed by the Commonwealth of Virginia.  2015 WL 13567760, at *2 (Va. Cir. Ct. July 28, 2015).  The *Kwang Li* court held that the public's interest in equitable settlements and administration of proper judicial power should hold "even greater force when the public is being asked, even for good reasons, to subsidize medical care to an individual by foregoing all or some portion for an amount specifically reserved to, and protected by lien, for the Commonwealth (and, by extension, the public)."  *Id.*  Thus, the court declined to seal the documents.

An analogous situation appears here.  As in the wrongful death context, the Court must here approve a private settlement due to the presence of a minor plaintiff.  Va. Code § 8.01–424.  Additionally, the presence of a compromised Commonwealth's lien implicates taxpayers' rights to know of such a reduction and its relation to the overall settlement amount and terms.  "The sealed documents in this case implicate public concerns that are at the core of the interests protected by the right of access:  'the citizen's desire to keep a watchful eye on the workings of public agencies . . . [and] the operation of the government.'"  *Doe*, 749 F.3d at 271 (declining sealing of judicial documents in a case involving Consumer Product Safety Commission database material attributing an infant's death to the defendant's products).  The *Doe* court emphasized that public interest in access to civil proceedings "is at its apex," when the

12

government becomes involved in the litigation, especially regarding "positions that its elected officials and government agencies take in litigation." *Id.*

Here, the public's right to know of the positions taken by its elected official, the Virginia Attorney General, approaches its zenith: the Commonwealth used public funds to pay for A.P.G.'s medical treatment and did not fully recover the total amount paid. Indeed, only roughly twenty-two percent of the total costs originally claimed are being recouped: $69,493.69 of $318,302.65, or two percent of the total settlement amount. In contrast, Plaintiff's attorneys seek to claim a much more substantial percentage of the settlement — forty percent.[2] Although the Attorney General's office undoubtedly has a sound reason for compromising the Commonwealth's lien as it did, the public has a right to know of the decision, as well as the potential for greater recovery that their elected official declined to seek. Therefore, both the lien and the greater § 8.01–424 backdrop weigh in favor of the public's right to access under the common law and the First Amendment; these interests outweigh any countervailing interests that Plaintiff may have.

### 2.     Parties' Interests Do Not Overcome Rights of Access

As found above, in weighing all of the relevant interests in support of and against sealing Plaintiff's Motion for Approval, the Court finds that Plaintiff failed to overcome the presumption of openness and access to judicial records under both the First Amendment and the common law.

---

[2]     The Court does note that under Va. Code § 8.01–66.9 ("Lien in favor of Commonwealth, its programs, institutions or departments on claim for personal injuries"), Commonwealth's liens "shall be inferior to any lien for payment of reasonable attorney's fees and costs, but shall be superior to all other liens created by the provisions of this chapter and otherwise. Expenses for reasonable legal fees and costs shall be deducted from the total amount recovered." The Court does not dispute that attorneys' fees must and shall be paid out of the total settlement amount, but the stark difference in Plaintiff's attorneys' fee request amount and the Commonwealth's compromised lien amount emphasizes the need for public oversight.

13

On one side, Plaintiffs argue that the confidentiality of private settlements along with the privacy interests of A.P.G. sufficiently outweigh the public interest of access. On the other side, the common law and First Amendment rights of access presents a high hurdle, which heightens due to the mandatory judicial approval of the settlement and the presence of a compromised Commonwealth's lien. Again, the Court acknowledges the role that confidentiality plays in private settlements and that public policy favors out-of-court settlements, but these generalized interests do not give rise to a compelling government interest, nor do they overcome the public interest in access. Similarly, while protection of a minor child clearly constitutes a compelling interest in general, Plaintiff does not sufficiently demonstrate a concrete harm that will arise should the Court decline to seal the Motion for Approval. In contrast, the Court's obligation under Va. Code § 8.01–424 to ensure A.P.G.'s best interests, the taxpayer's stake in oversight of their elected officials regarding lien compromises and the heavy presumption of openness all dictate that the Court decline to seal the requested document.

## CONCLUSION

As mentioned above, in the absence of a specific privacy interest and in the face of the strong presumption of the public's right to access of judicial records, the Court has no choice but to unseal the redacted version of Plaintiff's Motion for Approval. (ECF Nos. 98, 108.) "While safeguarding children is undoubtably a compelling interest, a party or a court cannot simply state, 'This case involves a child; entire case sealed.' A child in a case, alone, is not a sufficient condition to seal." *Brown*, 2020 WL 8835045, at *4.

Thus, for the reasons set forth above, the Court DENIES Plaintiff's Motion to Seal.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date:  July 7, 2023

15